## MARTIN v. STATE.

Opinion delivered January 2, 1911.

1. HOMICIDE—RESISTING ARREST—INSTRUCTION.—Where defendant struck the decedent's brother with a rock, and then ran, and was pursued by decedent, and while being pursued defendant killed decedent, an instruction that decedent had a right to pursue defendant and to use reasonable means to prevent his escape, and that if defendant, in resisting such pursuit, killed decedent, he would not be justified, was erroneous, (1) in assuming that defendant had committed a felonious assault upon decedent's brother such as would justify decedent in preventing defendant's escape; (2) in assuming that decedent was pursuing defendant for the purpose of arresting him. (Page 215.)

2. EVIDENCE—CONFLICTING PRESUMPTIONS.—Between conflicting presumptions that which is in favor of the innocence of the accused prevails. (Page 216.)

Appeal from Scott Circuit Court; *Daniel Hon,* Judge; reversed.

### STATEMENT BY THE COURT.

Appellant and his brother were indicted jointly for killing Will Shores. The charge against them was murder in the first degree. They severed on the trial, and appellant was convicted of manslaughter, and his punishment was assessed at two years in the penitentiary.

The Martins and the Shores were not on good terms. While they were returning from a religious meeting, Sherman Shores, who was on horseback, rode around appellant, who was walking. Sherman started on the road to his home "at the forks of the road" when appellant cursed him, called him a liar and dared him back. Sherman came back, and said, "Robert Martin, you called me a liar, and dared me back." Appellant used an oath, and said: "Yes, I did." Sherman Shores began to get off his horse, leaning over in his saddle as far as he could, when appellant threw a rock about the size of an ordinary teacup at Sherman and knocked him off his horse, and rendered him unconscious. Appellant was within 10 or 12 feet of Sherman when he threw the rock. As soon as he had thrown it he ran, and Will Shores, the brother of Sherman, ran after appellant and caught him at a distance of about 30 yards. They were "hugged up together" until a witness separated them, and then appellant was seen with a knife.

Will Shores then returned to where he had started, fell over and said: "Boys, I am stabbed." Will Shores, when he started after appellant, took off his overcoat, and in the pocket of the overcoat was a small knife closed. He left the overcoat at the point where he first started to run after appellant. Andrew Martin ran up to where appellant and Will Shores were. Andrew Martin ran his hand in his pocket about the time appellant and Will Shores were separated. After their encounter appellant and Andrew Martin said that there had been a fight; that all three of the Shores boys were on appellant. There was testimony tending to show that Andrew Martin had his knife open just after Will Shores was cut. A witness saw him close his knife, and heard one of the Martins say: "I got in a good one on him," and looked around and Andrew measured on his hand. Will Shores lived some time after being cut, and made a dying declaration, in which he stated that appellant "threw a rock at Sherman Shores and knocked him off his horse." The statement continues: "I took after him and caught him. Andrew Martin came up, and cut at me, and they stabbed me, and Elwell McCafferty pulled him loose, and I went back to where Emma McCafferty was and fell, and they carried me in from there." The testimony on behalf of the State showed that appellant and his brother Andrew made threats that they "were going to whip the Shores boys."

The above is substantially the testimony in behalf of the State. The testimony of appellant in his own behalf is in part as follows:

"By that time we had got to the forks of the road, and he, Sherman Shores, started down his road, and I started down mine, and I said, 'You can't just beat it out of anybody,' and he says, 'You are a liar; I would have beat it out of you back there if you had not begged like a dog,' and he turned his horse, and came back to me, and says, 'I will either whip hell out of you or kill you.' Rode right up pretty close to me, got off his horse and made a step towards me with his knife in his hand, and I picked up a rock when he started towards me and hit him with the rock and ran. I knew the other boys were ahead; I did not know where they were. I ran down the road towards the culvert and home. I saw those boys, and heard Milton say: 'There he is, boys, catch him, and let's kill him.' I looked around the bridge,

ran up in the woods and came in the road, and they both took after me, Will Shores and Milton. Will caught me by the collar and says, 'I will cut your throat,' and jerked me, got me by the throat and struck me there. I heard him say, 'Stand back or I will cut you, too.' I took out my knife then and opened it and jabbed Will; just reached my arm around him and jabbed at him twice. Then he loosened up a little on my throat, and I shoved my hand under him, and shoved him back a little, and cut at him again. By that time Elwell McCafferty was there and shoved us apart, and shoved me down, and Andrew came and helped me up, and he and I went up where Orville and Lee Mc-Cafferty were, and Orville says: 'What is the matter?' and I think Andrew told him the Shores boys jumped on me and Milton cut me, and Orville asked if he hurt me, and Andrew said 'He cut a gash in his coat about that long' (indicating). Then we went home." That he never was in any conspiracy against the Shores boys.

There was testimony tending to corroborate the testimony of appellant.

Among other instructions the court gave the following:

"14. If the defendant made an assault on Sherman Shores by striking him with a rock, and then ran, the deceased, Will Shores, had the right to pursue him and use all the reasonable means to prevent his escape, and would not be engaged in an unlawful act in so doing; and if the defendant, in so resisting the pursuit of deceased, Will Shores, killed him, he would not be justified in the killing, and could not plead self-defense in so doing."

The appellant duly saved his exception to the giving of the above instruction, and assigns the alleged error as one of the grounds of his motion for new trial which was overruled, and he appealed.

*A. G. Leming,* for appellant.

The court's instruction on the question of Will Shores' right to pursue and prevent appellant's escape, etc., is erroneous in assuming that appellant had committed a felony in striking Sherman Shores with a rock. Such an act may or may not be a felony, and is a question of fact for the jury. Moreover, there is

no proof that deceased, who was not an officer, made pursuit for the purpose of making a lawful arrest, rather than as an avenger, and no presumption can be indulged that his intentions were lawful as against the presumption of innocence which follows the accused throughout his trial. 22 Ark. 79; 34 Ark. 517, 518; 67 Ark. 278; 59 Ark. 431; 76 Ark. 468; 63 Ark. 177; 65 Ark. 222; 66 Ark. 506.

*Hal L. Norwood,* Attorney General, and *William H. Rector,* Assistant, for appellee.

The instruction, if erroneous, was so in form rather than of substance, and should have been met by specific objection. 95 Ark. 100. Appellant could not have been prejudiced by it, because the proof is uncontradicted that appellant's assault on Sherman Shores was unprovoked, and with a deadly weapon. Wharton on Homicide, § 396; 33 Ark. 321.

Wood, J., (after stating the facts). The instruction assumes that, if appellant made an assault on Sherman Shores by striking him with a rock, this would be a felony. The instruction in this form ignores the testimony of appellant as follows: Sherman Shores "rode right up pretty close to me, got off his horse and made a step towards me with his knife in his hand, and I picked up a rock when he started towards me and hit him with the rock and ran." It was a question for the jury as to whether the assault made by appellant on Sherman Shores was a felony. The court could not take that question from the jury, and say as matter of law that the assault of appellant on Sherman Shores, under the circumstances, was felonious. Yet that is what the court did when it told the jury that Will Shores had the right, after the assault was made upon Sherman Shores by appellant, "to pursue him (appellant) and use all reasonable means to prevent his escape," *i. e.,* to arrest the appellant. "A private person may make an arrest where he has reasonable grounds for believing that the person arrested has committed a felony." Kirby's Dig., § 2120. Unless appellant had made a felonious assault on Sherman Shores, Will Shores had no right to arrest him, and as we have stated it was a jury question, under the facts, as to whether the assault under the circumstances was felonious. The instruction in this respect was not a mere mistake in verbiage, but

was an erroneous statement of a proposition of law that was misleading and prejudicial.

Again, the instruction assumes that Will Shores pursued appellant for the purpose of preventing his escape. It is doubtful whether the evidence warranted the court in submitting to the jury at all the question of whether or not Will Shores pursued appellant for the purpose of arresting him. But certainly, if there was any evidence that such was the purpose of Will Shores, there was also much evidence to warrant a finding that his purpose was not to arrest appellant, but to avenge what he considered the wrong to his brother. Therefore it was a question for the jury to say what was his purpose. To say, without any evidence to that effect, that Will Shores was pursuing appellant for the purpose of arresting him, and that he "would not be engaged in an unlawful act in so doing," was tantamount to an assumption by the court that appellant had committed a felony in killing Will Shores, and its effect was to take away from appellant the right to have the jury consider his plea of self-defense; and the evidence adduced by him in support thereof. The court could not indulge the presumption that the intention of Will Shores in pursuing appellant was innocent. For such a presumption would conflict with the presumption of innocence, which always and without limitations attends the accused through the whole case until overcome by proof. To presume the innocence of Will Shores was also to presume the guilt of appellant. Between conflicting presumptions, that which is in favor of the innocence of the accused prevails. *Sharp* v. *Johnson,* 22 Ark. 79; *Holbrook* v. *State,* 34 Ark. 517, 518; *McArthur* v. *State,* 59 Ark. 431. See also *Cash* v. *Cash,* 67 Ark. 278.

While the court correctly charged the jury in other instructions as to the law of self-defense, there was no instruction except the one under consideration on the question of the right of a private person to arrest one who had committed a felony. We doubt whether an instruction on this question is applicable to the facts of this record. But, if so, then the law should be correctly declared. The instruction was calculated to mislead the jury, and was therefore prejudicial error, for which the judgment is reversed, and the cause remanded for new trial.

McCULLOCH, C. J., dissenting.