SCHOOLEY v. STATE.

Opinion delivered January 23, 1928.

1. SEDUCTION—CORROBORATION OF PROSECUTRIX.—Where accused, in a prosecution for seduction, admitted having intercourse with the prosecutrix, there was no necessity for corroboration of her testimony as to such fact.

2. WITNESSES—CROSS-EXAMINATION.—On cross-examination, a witness can be asked any questions bearing on his character tending to throw light on matters affecting his credibility for purposes of impeachment, and may be asked whether he has committed particular wrongful or immoral acts, if the commission of such acts affects his credibility.

3. WITNESSES—CROSS-EXAMINATION OF WITNESS.—In a prosecution for seduction, refusal to permit cross-examination of the sister of prosecutrix, as for purposes of impeachment, as to whether she had not had improper relations with a certain man and whether she had not been intoxicated on certain occasions, *held* error.

4. WITNESSES—IMPEACHMENT ON CROSS-EXAMINATION.—On cross-examination, a witness cannot be asked questions as to the conduct and declarations of others for purposes of impeaching his credibility as a witness, but the question must be confined to his own conduct.

5. WITNESSES—CROSS-EXAMINATION—CONCLUSIVENESS OF ANSWER.— On cross-examination of a witness as to particular facts for the purpose of impeaching his testimony, his answers conclude the party asking the questions and cannot be contradicted.

6. CRIMINAL LAW—STATEMENT OF ATTORNEY REGARDING EXCLUDED QUESTION.—Where the question whether a witness had not had illicit relations with a certain man, asked by defendant on cross-examination of the sister of the prosecutrix in a seduction case, was excluded, the statement of defendant's attorney that he expected to prove the facts suggested in the question sufficiently showed what the answer of the witness would have been in order to show whether prejudice resulted from its exclusion.

7. CRIMINAL LAW—EXCLUSION OF TESTIMONY—PREJUDICE.—In a prosecution for seduction, in which the State relied largely on the testimony of the sister of prosecutrix to corroborate her testimony respecting the promise of marriage, exclusion of a question as to whether the witness had not been drinking liquor or was intoxicated on a certain occasion, asked on cross-examination to affect her credibility, *held* prejudicial error.

8. CRIMINAL LAW—WAIVER OF OBJECTION.—Where, after the court refused to permit defendant's attorney to cross-examine a witness concerning whether she had been intoxicated on a certain occasion, defendant's attorney stated that "at present we will not pursue it further," *held* that he did not thereby abandon the question or any rights that he might have by reason of his objection and exception.

9. CRIMINAL LAW—HEARSAY EVIDENCE.—In a prosecution for seduction, the court erred in permitting the State to prove a conversation between the father of prosecutrix and the father of defendant, in which the former stated that his daughter had told him that defendant had promised to marry prosecutrix, where defendant had no opportunity to reply to such statement.

10. SEDUCTION—CHASTITY OF PROSECUTRIX.—In a prosecution for seduction, an instruction that, if the prosecutrix was chaste at the time of the promise of marriage but became unchaste thereafter, they should acquit defendant, was properly refused, since, if she were chaste at the time of the promise of marriage and when defendant committed the crime, her subsequent conduct would not affect his guilt or innocence.

Appeal from Howard Circuit; *B. E. Isbell,* Judge; reversed.

*Luke Monroe* and *Feazel & Steel,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

MEHAFFY, J.   Appellant was indicted, tried and convicted in the Howard Circuit Court on a charge of seduction, and his punishment fixed at one year in the penitentiary and a fine of one hundred dollars.   Appellant filed motion for new trial, which was overruled, exceptions saved, and appeal prosecuted.

The proof shows that appellant, who was about twenty years old, had intercourse with the prosecuting witness, Dura Stone, a girl about eighteen years old. Appellant admitted having intercourse with her.

Dura Stone testified that appellant promised to marry her.

Several men testified that they had had intercourse with Dura Stone, some of them fixing the date at which they had intercourse with her at a time prior to the time she says appellant promised to marry her.   She denied having intercourse with any one except appellant, either before or after the time she says appellant promised to marry her.

Since appellant admitted having intercourse with the prosecutrix, there was no necessity for other corroboration of her testimony as to intercourse.   There was some evidence corroborating the statements of prosecutrix as to promise of marriage.

Appellant's first contention is that the court erred in not permitting the defendant to question Vee Stone, on cross-examination, with reference to her past conduct. On cross-examination Vee Stone, sister of Dura Stone, was asked: "I will ask you if it isn't true on that occasion Max Dyer had intercourse with you?"

This question was objected to, and the court said: "That is improper," and defendant's counsel said, "We offer to show that."   Objection was made to the ruling of the court, and exceptions saved.   Witness was then

asked: "Do you remember going to a dance at Hunter's in the fall of 1925?" She answered: "I do not remember. · I went to several dances there, but do not remember when."

The court then said: "What is the purpose of that?"

The attorney for the defendant said: "We offer it as affecting her credibility. We offer to show by the witness that she attended a dance at Abb Hunter's, in the fall of 1925, and in returning she was overtaken by Sam Schooley and Hilton Keath, and that she and Dura rode home with these men. That at that time she and her sister were under the influence of liquor, and that she drove the car into a telephone post."

Thereupon the court said: "You can ask Dura that, because she is the prosecutrix. You can ask that so far as it applies to the prosecuting witness, but not as to her."

Defendant's attorney said: "At present we will not pursue it further," and saved exceptions to the court's ruling.

A witness may always be asked, on cross-examination, questions bearing on his or her character which tend to throw light on matters which are proper for the purpose of impeachment. She may be asked about particular acts which affect her credibility for the purpose of impeachment, and may be asked whether he or she has committed particular wrongful or immoral acts if the commission of such acts would affect the credibility of the witness.

The court therefore erred in not permitting the defendant to ask Vee Stone the questions about her conduct.

This court, in a recent case, said:

"It has always been held that, within reasonable limits, a witness may, on cross-examination, be very thoroughly sifted upon his character and antecedents. The court has a discretion as to how far propriety will allow this to be done in a given case, and will or should prevent any needless or wanton abuse of power. But,

within this discretion, we think a witness may be asked concerning all antecedents which are really significant and which will explain his credibility. * * * A witness, upon cross-examination, may be asked whether he has been in jail, the penitentiary or State prison, or any other place that would tend to impair his credibility, and how much of his life he has passed in such places." *Whittaker* v. *State,* 171 Ark. 762, 286 S. W. 937.

In the last cited case many of the authorities are cited and reviewed, and we deem it unnecessary to set them out here. The well-established rule in this State is that the witness, on cross-examination, may be asked any question that affects the credibility of the witness. A witness, however, cannot be asked questions as to the conduct and declarations of others, but the question must be confined to his own conduct. And where witnesses are asked, on cross-examination, as to particular facts, as in this case, for the purpose of impeaching the witness, the answer of the witness concludes the party asking the question, and cannot be contradicted by other evidence.

The State, however, contends that there is nothing in the court's ruling on these questions that would justify this court in reversing the judgment of the lower court, and states that this case comes well within the rule of this court that, where a question is excluded on cross-examination and exceptions saved thereto, in order to show that prejudice resulted, the record must show what the answer of that witness would have been, and cites the recent case of *Williams* v. *State,* 175 Ark. 752, 2 S. W. (2d.) 36, delivered December 12, 1927. In that case the court said:

"At the outset it may be stated that the questions asked the witness on cross-examination by counsel for defendant were proper, under *Hughes* v. *State,* 70 Ark. 420, 68 S. W. 676, and *Martin* v. *State,* 161 Ark. 177, 255 S. W. 1094."

The court also said in that case: "In this connection it may be stated, however, that it is a settled rule of this court not to reverse judgments except for errors

that are prejudicial to the rights of the defendant;" and cited a number of cases.

The court further said in the last case mentioned:

"So it will be seen that, if Miss Williams had answered the question in the negative, this would have ended the matter. If she had answered it in the affirmative, the answer would have been allowed to go to the jury for what they considered it worth as affecting her credibility. She did not answer it at all, and a majority of the court are of opinion that this brings the case within the general rule that, where evidence is ruled out as being incompetent, there must be set out in the record what the answer of the witnesses would have been. Otherwise the court would not know whether or not there had been any prejudicial error committed."

The witness in the case of *Williams* v. *State, supra,* as stated by the court, did not answer the question and the defendant did not state what the answer would have been. But, in the case at bar, the attorney for the defendant, after asking the question and the court stating that it was improper, stated, "We offer to show that." Whether he meant by that that we offer to show what we have asked, or we offer to show by this witness that the facts suggested in the question are true, may not be very clear, but it certainly appears, from the question and answer and statements of counsel, that they expected to prove the facts suggested in the question by this witness. And if this witness would testify to that, it would certainly affect her credibility.

As to the next question, the one with reference to drinking whiskey and being intoxicated, or under the influence of liquor, the court would not permit the attorneys to ask the question nor the witness to answer it, and the attorney for the defendant said: "We offer it as affecting her credibility. We offer to show by the witness that she attended a dance at Abb Hunter's in the fall of 1925, and, in returning, she was overtaken by Sam Schooley and Hilton Keath, and that she and Dura rode home with these men. That at that time she and her

sister were under the influence of liquor, and that she drove the car into a telephone post.'' Here the attorney says that he will show that by this witness. We think this is equivalent to saying that this witness will testify to that. That is the only way he could show it by this witness.

The court said this would be a proper question to ask Dura, the prosecuting witness, but not this witness. In this the court was in error. The State contends, however, that, because Mr. Steele said, ''At present we will not pursue it further,'' he is not entitled now to a rever- sal because of this error. What the attorney meant by not pursuing it further it is impossible to tell, but that he did not intend to abandon this question nor any rights that he might have is clearly shown by the fact that he objected to the ruling of the court, and saved his excep- tions. He very probably meant, by not pursuing it fur- ther, that he did not intend to ask this witness about any other of her conduct or acts. At any rate, it is perfectly clear that he told the court that he could prove by this witness that she had been under the influence of liquor at the time mentioned, and, when the court did not permit him to ask the question nor the witness to answer it, proper exceptions were saved.

We think that it not only shows what the answer would have been, but the exclusion of this testimony was prejudicial. It was especially important in this case that the defendant be permitted to cross-examine this witness and bring out or develop facts that would affect her credibility, because the State relies largely, if not solely, on her testimony as corroborating the testimony of the prosecutrix that a promise of marriage was made. The State was required to prove the promise, the prosecutrix testified to the promise, and this witness corroborated her. It was therefore important that the defendant be permitted to impeach this witness by asking these ques- tions on cross-examination.

The authorities supporting the views herein expressed with reference to impeaching the witness on

cross-examination are cited in the briefs of counsel, and need not be reviewed here.

It is next contended that the court erred in per-mitting the State to prove a conversation the father of the prosecutrix and the father of the defendant had. It was not proper to admit in evidence this conversation. In the first place, the father of the prosecuting witness stated that his daughters had told him that Herbert had promised to marry her. The defendant had no opportu-nity to say anything, because at this time his father made the statement referred to, and we do not think there was anything said that would require the defendant to reply. In fact, it seems he did not have any opportunity to reply.

It is next contended that the court erred in exclud-ing the testimony of Eldridge Ross. We think this testi-mony was properly excluded. It would have had no tendency to show whether the girl was chaste or not. It would not even have a tendency to show her conduct, and what was said does not indicate what her conduct was. It is what might have been said to any chaste, pure girl, under the circumstances, and her answers are what such a girl might have made. The court should have required the State to use Ed Webb, if it desired to use him at all, before the defendant was required to offer his evidence.

It is next contended by the appellant that the court erred in refusing to give instructions numbers one, four and five. Instruction number one tells the jury, in effect, that, although Dura Stone was chaste at the time of the promise of marriage, but thereafter, and before they were to be married, became unchaste, they should acquit the defendant. If she was chaste at the time of the prom-ise of marriage, and the defendant committed the crime, nothing that she may have done thereafter would affect his guilt or innocence. He either committed the crime at that time or he did not, and, if he did, her conduct thereafter, while it might be offered in evidence as affect-ing her credibility, would not affect his guilt or inno-

cence. The same may be said of the other instructions refused by the court.

We think the court properly instructed the jury, but, for the errors above mentioned, the case is reversed, and remanded for a new trial.