RAYBURN *v.* STATE.

4159 · 141 S. W. 2d 532

Opinion delivered June 17, 1940.

*O. W. Pete Wiggins,* for appellant.

*Jack Holt,* Attorney General, *Jno. P. Streepey,* Assistant Attorney General, *Pat Mehaffy* and *Henry E. Spitzberg,* for appellee.

SMITH, J.   A death sentence was imposed upon appellant at the trial from which is this appeal.   He was tried upon an information at the bottom of which the name of the prosecuting attorney was printed, but the information was signed by Henry E. Spitzberg, as deputy prosecuting attorney.   The sufficiency of the information is questioned for this reason, it being insisted that to be valid it should have been signed by the prosecuting attorney personally.   This same question was raised in the case of *Johnson* v. *State,* 199 Ark. 196, 133 S. W. 2d 15, and was decided adversely to appellant's contention, it being there held that a deputy prosecuting attorney may file an information if he does so in the name of the prosecuting attorney.   See, also, *Bone* v. *State, ante* p. 592, 140 S. W. 2d 140, to the same effect.

Other errors assigned for the reversal of the judgment, which are of sufficient importance to require dis-

cussion, will be considered, but will not be separately discussed, as in some instances several of them will be considered together.

The information charged that appellant had shot and killed Sigur Fosse, and that he did so in an attempt to rob J. M. Goad, agent in charge of Tanner's Cafe in the city of Little Rock.

By his own admissions upon his cross-examination, appellant had recently escaped from the penitentiary in the State of Texas, where he had been confined under a life sentence for murder. Appellant was asked on his cross-examination about the commission of various crimes, some of which he admitted. Others he denied. No independent testimony was offered as to any specific crime committed by appellant, but when he became a witness in his own behalf, it was competent to inquire of him concerning his recent residence, associations and occupation. Admissions made on the cross-examination disclosed that appellant had a criminal career. Among other crimes inquired about was the burglarizing of a pressing-shop after shooting Fosse, and kidnaping a man in an automobile in which appellant effected his escape, after the commission of the burglary, all three of which felonies were alleged to have been committed during the same night. This examination was competent in any event and was relevant upon the question of appellant's intention in entering the cafe where he had killed Fosse.

Appellant entered the cafe after midnight. Goad, the manager of the cafe, was on duty, as were also two young women, who evidently were waitresses. Others present were Ed Allen and Fosse. There are a few minor discrepancies in the testimony of these witnesses, the chief being whether appellant had his pistol in his hand when he entered the cafe, but all agree that immediately after entering the cafe appellant announced that "This is a hold-up," and commanded the persons in the cafe to hold up their hands and go to the rear of the cafe. There was a small space between two counters through which ingress was afforded to one wishing to go behind

the counters.. The cash register was on the end of one of these counters, and there was a stool fronting the counter near this end, on which Fosse was seated. Fosse, with the others, first held up his hands when commanded to do so, but immediately lowered them. Appellant commanded Fosse to go to the rear of the cafe, but Fosse refused to do so. He then told Fosse to move off the stool so he could go between the counters. Fosse replied, "I ain't moving." Appellant then stuck his pistol in Fosse's side and said he would shoot if Fosse did not obey him. Fosse told him to shoot if he felt like doing so. Appellant commanded Goad to give him the money in the cash register. Goad declined to do so, but told appellant to help himself. Appellant restored his pistol to his belt and started between the counters to the cash register. Appellant turned the cash register partly around, when Fosse, displaying more nerve than discretion, took a long quick step toward appellant and struck him in the neck, knocking appellant to his knees. A scuffle ensued, and a shot was fired in the cafe. The struggle continued as appellant attempted to make his way to the door, and four other shots were fired after the parties had fought their way out of the cafe. All the shots appear to have taken effect on the body of Fosse.

Appellant's defense was not disclosed in the opening statement of his attorney to the jury, and the state put on the testimony of Sergeant Fink, of the Little Rock detective force, as a fingerprint expert, and Sergeant Shannon, of the Arkansas State Police, as a ballistic expert, to prove that Fosse had been killed by shots fired from appellant's pistol. Any question as to the competency of this testimony becomes unimportant in view of the fact that appellant admitted shooting Fosse.

Appellant's version of the shooting was to the following effect. He saw the young women in the cafe, and went into it to see them. He thought they might furnish him information as to the whereabouts of a friend of his living in North Little Rock. He had no intention of robbing the cafe. Fosse apparently resented his con-

versation with the young women and provoked the assault upon him. He attempted to retreat, but was pursued by Fosse. He did not intend to shoot Fosse, but the pistol was an automatic and fired as they scuffled for its possession. He insists also that, even though the testimony is sufficient to show an attempt on his part to rob the cafe, it shows also that he had abandoned that attempt and that Fosse was killed while he was attempting to escape.

The insistence is that as he was charged with murder in the first degree, alleged to have been committed in the perpetration, or in an attempt to perpetrate a felony, under § 2969, Pope's Digest, he was not guilty of murder in the first degree if he had abandoned the attempt to commit a felony and killed Fosse in an attempt to escape, nor was he guilty of that degree of homicide unless deliberation and premeditation were shown, and that deliberation and premeditation must be both alleged and proved. The statute just referred to provides that "All murder which shall be committed . . . in the perpetration of or in the attempt to perpetrate arson, rape, robbery, burglary or larceny, shall be deemed murder in the first degree." In the construction of this statute it has been frequently held that it is not essential to prove any intention to kill, but that it suffices, and a case is made, if the killing occurs in the perpetration of or in the attempt to perpetrate any of the crimes named, although a killing was not intended.

To sustain the contention just stated, the case of *Harris* v. *State*, 170 Ark. 1073, 282 S. W. 680, is cited and relied upon. In the opinion in that case Justice Hart said: "Again, it is equally evident that, after one of the felonies mentioned in the statute has been committed and the parties committing it have left the place where it was committed and are only engaged in escaping, the killing to prevent arrest would not be deemed murder in the first degree *under the statute*." (Section 2969, Pope's Digest.)

Several answers may be made to this contention. The first is that the information in this case charged,

not only that the homicide was committed in the attempt to perpetrate a felony, but it charged also that it was committed after deliberation and with premeditation. The second answer is that, unlike the Harris case, *supra,* appellant had not left the place where the attempt was made to commit a felony. We do not know whether Fosse merely intended to prevent the commission of the felony or intended to arrest the felon. He had the right to do either. A private citizen, who is not an officer, may arrest, without a warrant, one who has committed a felony in his presence to prevent the escape of the felon. Section 3721, Pope's Digest; *Martin* v. *State,* 97 Ark. 212, 133 S. W. 598.

In neither case would appellant have had the right to kill Fosse. It was not held in the Harris case, *supra,* that the felon who had fled the scene of the felony, for the commission of which his arrest was sought, had the right to kill to effect his escape. It was only held that in such a case he would not be guilty of murder in the first degree under § 2969, Pope's Digest. Yet, he might be guilty of a lower degree of homicide, although indicted under that section of the statutes. But Fosse was not attempting to make an illegal arrest if that was his intention. Nor was he acting without rights if he was attempting to prevent the robbery. He had the right to do either, although only a man of foolhardy courage would have made either attempt under the circumstances detailed. The circumstances attending this killing, beginning with the striking of appellant by Fosse, to its conclusion, when Fosse had been fatally shot, was a continuous transaction, happening so rapidly that the witnesses to it differed somewhat as to its details, and we think the jury was warranted in finding that Fosse was killed by appellant while appellant was attempting to commit a felony.

Another answer to the contention above stated is that the court gave elaborate and correct instructions, of which no complaint is made, covering all the defenses interposed in this case. The jury evidently disbelieved the

testimony offered by appellant, and accepted as true that offered by the state, and that testimony is sufficient to support the findings that appellant killed Fosse in the attempt to commit robbery, and, if so, he is guilty of murder in the first degree.

Another assignment of error is that appellant was brought into the court room handcuffed in the presence of the jury, and that handcuffs were placed upon him on each occasion as he was taken from the courtroom, a fact also observed by the jury. The trial lasted for three days, and no complaint of this action was made during its progress. No contention is made that appellant was prevented from freely consulting with his attorney.

This, we think, was a matter within the discretion of the trial court. Certainly, it was the duty of the officers to prevent appellant's escape, and they had the right to take such precautions as appeared to them to be reasonab'y necessary to prevent it.

The cause of *Commonwealth* v. *Millen*, 289 Mass. 441, 194 N. E. 463, is one decided by the Supreme Judicial Court of Massachusetts, in which case the defendants were shackled during their trial, and the court refused to order the removal of the shackles during the trial. It was insisted that the presiding judge had abrogated his authority and control over the defendants in the courtroom to the sheriff, and that this was a violation of the rights of the defendants to due process under the 14th Amendment to the federal Constitution. The defendants were not denied the right to freely confer with their counsel. In overruling this contention it was said: "It was also the duty of the sheriff to see that the defendants when placed upon their trial were properly guarded to insure their presence there, and that the safety of others was protected. If, as could have been found the sheriff had knowledge that it was advisable and necessary during the trial to have shackles upon them, he violated no legal duty owed to them."

Trial courts must be allowed a discretion as to the precautions which they will permit officers, having cus-

tody of a prisoner upon trial, to take to prevent the prisoner's escape, or to prevent him from harming any person connected with the trial, or from being harmed. No complaint was made during the progress of the trial that this discretion was being abused, and we think there was no abuse of discretion in this respect.

It is finally insisted that appellant did not receive a fair trial for the reason that a number of members of the police department of both Little Rock and North Little Rock were present in the courtroom during the trial, as well as members of the Arkansas State Police, all in uniform, as well as certain United States Marines. Fosse himself was a Marine, and the witnesses all referred to him as "The Marine." The insistence is that the presence of these. officers in the courtroom was calculated to and did create the impression on the jury that appellant was a desperate character requiring the closest surveillance. No complaint of this fact was made during the progress of the trial; but this too, was a matter within the discretion of the trial court. The "Marines" who were present appeared to have been in attendance either as spectators or as witnesses.

Trials such as this usually attract large audiences, and it is not improper to have enough officers to enforce order, and to protect the accused from violence and to prevent his escape, or possible rescue. The statute provides that "The sittings of every court shall be public, and every person may freely attend the same." Section 2707, Pope's Digest.

It was insisted in the case of *Kelley* v. *Oregon*, 273 U. S. 589, 47 S. Ct. 504, 71 L. Ed. 790, that the accused had been·denied due process because he was constantly in the custody of the warden of the penitentiary, both inside and outside the courtroom, during his trial. Chief Justice Taft said that it would attach a new meaning to due process to require that a person charged with a desperate crime to be free from custody during his trial.

In the case of *Bard* v. *Chilton, Warden*, 20 Fed. 2d 906, it was insisted that the petitioners for *habeas*

*corpus* had been denied their constitutional right to due process because a company of state militia was present at their trial when they were convicted for the crime of rape. In overruling this contention it was there said: "We are satisfied that there is no sufficient basis for sustaining petitioners' contention, unless we must say as a matter of law that, where there is such public excitement the state authorities think it prudent to call out the military force of the state to protect a respondent against unlawful violence, and where the trial is held under the immediate protection of this military authority and where some incipient disorder is by that force sternly suppressed, the trial, for that reason alone, is not due process of law. This we cannot say. The Supreme Court has considered this kind of situation in *Frank* v. *Mangum,* 237 U. S. 309, 35 S. Ct. 582, 59 L. Ed. 969, and *Moore* v. *Dempsey,* 261 U. S. 86, 43 S. Ct. 265, 67 L. Ed. 543, and an analogous matter in *Ashe* v. *U. S.* 270 U. S. 424, 46 S. Ct. 333, 70 L. Ed. 662. Under the principles of those cases and the facts shown by this record, the federal courts cannot interfere."

We are of the opinion that the mere presence of a number of city and state policemen did not constitute prejudicial error.

Upon the whole case we find no error in the record, and the judgment of conviction must be affirmed. It is so ordered.