STEVE A. WILSON *v.* THURSTON NATIONAL INSURANCE COMPANY

5-5777

475 S.W. 2d 881

Opinion delivered February 7, 1972

*Jones & Segers,* for appellant.

*Putman, Davis & Bassett,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant brought suit against appellee to recover for an alleged mysterious disappearance of a woman's diamond ring and other items of jewelry from his home at 833 West Sycamore in Fayetteville. Appellee's policy insuring against theft and mysterious disappearance of personal property was issued on August 31, 1968, and was in full force and effect at the time of the alleged loss. This appeal comes from a judgment based upon a jury verdict against appellant.

At the time of the alleged loss. appellant was married to Judith Wilson. They were having marital difficulties, and appellant took their minor child to Pennsylvania so that he could counsel with relatives. While in Pennsylvania, appellant received a call from his wife advising him of the loss of the jewelry. He said that he instructed her to tell anyone who needed to be told about the loss. He testified that the call came on July 23. He returned to Fayetteville on July 30. He said that he and his wife then went to the police station in Fayetteville and submitted a list of the missing items. Appellant had last seen the jewelry in a dresser drawer in his home when he left Fayetteville on July 15 or 16.

The principal item involved was the diamond ring, alleged to be of the value of $2,500. Appellant had given the ring to his wife. All of the jewelry belonged to her. He claims the right to recover under the terms of a property settlement with his wife incident to a divorce granted September 9, 1970. A previous loss of the ring had been reported, but the ring was recovered before any claim was paid.

Judith Wilson testified about the loss. She said that she lived at the Sycamore address with her husband and a friend named Sue Koppa. She thought the jewelry was stolen on July 22, 1970. On that night, she made her home available through a committee to anyone attending a "rock" concert at the University of Arkansas. She said that she did not stay at home that night, but spent the night with this same Sue Koppa at the latter's house on Oakland Street. She testified that she returned home the next day, discovered the loss, reported it to the police and her husband, checked several pawn shops and tried to ascertain the names of persons who might have stayed at her home. She said that friends visited the Wilson home frequently.

Appellee denied liability under the terms of the policy, and alleged that the contract was breached by the insured's failure to give it and the police prompt notice and to name the persons visiting in the home at the time of the disappearance of the jewelry.

Appellant's first point for reversal is based upon interrogation of Judith Wilson on cross-examination about her associates and their use of drugs. Without detailing her testimony, we can say that it had an important bearing upon the critical issues, *i. e.,* whether there was a mysterious disappearance of the jewelry under the terms of the policy, whether the matter was timely reported and whether she, as the owner of the property and an insured under the policy, had cooperated with the police. Some of her testimony was in direct conflict with that of police officers who testified. She was the only person who knew anything of the circumstances pertaining to the disappearance of the jewelry. As a result, her credibility may well have been the most important matter for jury consideration.

While appellant asserts that the court's error lay in admitting Judith Wilson's testimony about use of drugs by her and her associates, we do not take this to be the only effect of the cross-examination and the court's rulings. Before the interrogation of which complaint was made, the witness had, on direct examination, represented her open-end offer of a night's lodging to whoever among the hundreds of concert attendants might accept to be similar to that extended when a church brings visitors to town. On cross-examination she explained her actions by saying that she was a Christian and a good person, that a Christian loves and trusts people and that she trusted the unknown young people who would be coming to her house. She analogized the situation to the occasions when, as a Girl Scout, a complete stranger who was also a Girl Scout came to town and stayed with her. Thereafter, appellee's attorney commenced a course of inquiry about possible visitors to the Wilson house. The witness identified David Peters as one of her friends and Ron Kirby as another. She denied knowing Roger Dowell, but admitted knowing Joe Sanders, while disclaiming him as a friend.

After she stated that the Wilson house was open to her friends, the witness responded in the negative to inquiries whether her friends had used drugs there. The court sustained objections to questions whether some of

these friends had been arrested for illegal possession of drugs, and whether they were convicted on such a charge. After an objection to a question whether David Peters, Ron Kirby and Sue Koppa had been known to use drugs had been overruled, she responded that they had. She also answered in the affirmative an inquiry whether she had used drugs, after an objection had been overruled. She then stated that she may have used drugs once before the "theft," but her objection to a question about the kind of drugs was sustained.

Of course, because of lack of prejudice, reversible error cannot be predicated upon those questions to which the witness gave negative answers or the court sustained objections without any answers having been given. *Leonard* v. *State*, 106 Ark. 449, 153 S. W. 590; *Carr* v. *State*, 81 Ark. 589, 99 S. W. 831. This leaves only the questions and answers with reference to the witness' use of drugs and her knowledge of the use of drugs by her acquaintances. We have long recognized that a wide latitude of cross-examination should be permitted to elicit facts contradicting the witness' direct testimony or impeaching his credibility. *Huffman* v. *City of Hot Springs,* 237 Ark. 756, 375 S. W. 2d 795. Undue limitations imposed by the court constitute an abuse of discretion. *Washington National Insurance Co.* v. *Meeks,* 249 Ark. 73 (1970), 458 S. W. 2d 135. The trial court's exercise of discretion will not be disturbed on appeal unless there is an abuse. *Clark* v. *State,* 246 Ark. 1151, 442 S. W. 2d 225. It is proper to permit inquiry of a witness as to his residence, habits, antecedents and associations. *Willis* v. *State,* 220 Ark. 965, 251 S. W. 2d 816; *Rayburn* v. *State,* 200 Ark. 914, 141 S. W. 2d 532; *Schooley* v. *State,* 176 Ark. 895, 2 S. W. 2d 67; *Benton* v. *State,* 78 Ark. 284, 94 S. W. 688; *Little Rock Vehicle & Implement Co.* v. *Robinson,* 75 Ark. 548, 87 S. W. 1029. Most of the inquiries to which objection was made are collateral, so further pursuit of the matter, particularly the introduction of contradictory evidence, would have been foreclosed, but no such attempt was made here, so Ark. Stat. Ann. § 28-707 (Repl. 1962) is not applicable. There was not at any time any objection on the ground of self-incrimination.

In view of the fact that the witness' credibility was probably the most critical factor in the case and the manner in which she characterized her own actions, we cannot say that the trial judge permitted too much latitude in cross-examination. We certainly could not say that he abused his discretion.

Appellant also contends that there was reversible error in permitting Bill Brooks, a police officer, to testify by deposition that he received a telephone call from Mrs. Wilson on July 23, 1970, reporting the loss of the jewelry, without stating that he could identify her as the caller. This testimony was introduced by appellee after Mrs. Wilson had testified that she telephoned the police on that day, but did not recall the name of the policeman to whom she talked. The principal difference in the testimony of the two witnesses lay in her statement that she did not know the names of the people who might have spent the night in her house or the identity of workmen at labor on a nearby water line, and the officer's statement that the caller first said that she thought she knew who stayed at the house but declined to give their names and later said that she did not spend the night there and did not know their names. Officer Brooks also testified that the caller stated she preferred that no one come to the house to investigate. Mrs. Wilson had denied making any such statement. Identification of the caller by voice is not necessary, if there is sufficient circumstantial evidence identifying the parties to the conversation. *Wimberley* v. *State,* 217 Ark. 130, 228 S. W. 2d 991. We think the circumstances related were sufficient to justify permitting this testimony to go to the jury.

The next ground for reversal argued by appellant has to do with the admission in evidence of the report of Mrs. Wilson's complaint made and filed by Officer Brooks at the time of the call. He relies upon our holding that a police report of an automobile accident made by a state policeman who merely investigated after the incident had occurred is inadmissible as hearsay. See *Southern Farm Bureau Ins. Co.* v. *Reed,* 231 Ark. 759, 332 S. W. 2d 615. The analogy is not apt. There

the report was admittedly secondhand information from random or unidentified sources, and neither the informants nor the officers were available for cross-examination. Here, the report was made by the officer as an official police department record of the complaint, and the matters stated therein lay wholly within his personal knowledge, about which he was cross-examined. Furthermore, even though the report was made an exhibit to the officer's testimony and introduced as an exhibit, it was used primarily to refresh his recollection of the call and complaint. The report did not differ from Brooks' testimony in any material particular. Even if there was error in its introduction, it was harmless.

Appellant also contends that the circuit judge erred by giving the following instruction:

> You are instructed that the mere disappearance, without mysterious circumstances of an article covered by the policy is not sufficient of itself to warrant a finding that the loss was due to theft, larceny or burglary within the terms of the policy of insurance in question.

The insurance policy included a rider entitled "extended theft coverage" under the following definition:

> Theft, meaning any act of stealing or attempt thereat, or mysterious disappearance (except mysterious disappearance of a precious or semi-precious stone from its setting in any watch or piece of jewelry).

Appellant now argues that this instruction placed the burden upon him to prove that the jewelry was stolen and how it was stolen. While we do not so construe this instruction in the light of the policy language before the jury and in the light of other instructions given by the court, appellant did not make his present objection to the instruction when it was offered. His objection was general, and would be sufficient only if the instruction was inherently erroneous. *Decker* v.

936

*Gibbons,* 250 Ark. 1045 (1971), 468 S. W. 2d 252.[1] We cannot say that this instruction was inherently erroneous under the circumstances existing.

The judgment is affirmed.

---

[1]A general objection to an instruction is not permitted in trials after December 31, 1971. See Rule XIII, Uniform Rules for Circuit and Chancery Courts, adopted by per curiam order of October 25, 1971.