CLAUDE S. "SANDY" CARTER, JR. AND THOMAS
C. BURKHEAD *v.* STATE OF ARKANSAS

CR 73-82                                      500 S.W. 2d 368

Opinion delivered October 8, 1973
[Rehearing denied November 13, 1973.]

226

Jim Hooper, Harkness, Friedman & Kusin, and Jack Lessenberry, for appellants.

Jim Guy Tucker, Atty. Gen., by: Philip M. Wilson, Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellants Carter and Burkhead were found guilty of sodomy, alleged to have occurred shortly after 11:00 p.m. in Carter's automobile which was parked at the public rest and tourist information facility adjacent to Interstate Highway 70, where other parties had parked trucks, automobiles and campers. Appellants admit the evidence is sufficient to sustain the jury verdict, if our sodomy statute is constitutional as applied to them. Thus, it will be unnecessary for us to set out the sordid testimony about the act, which appeared so revolting to one of the two deputies sheriff, who stated they observed it while patrolling the area, that he vomited thrice during the evening—the first time as an immediate reaction to his seeing what was taking place in the automobile, and the others while appellants were in custody and being "booked." Although both appellants flatly denied that they had engaged in the homosexual act related by the police officers, they contend that even if they had done it, the state's evidence only shows a consensual act in which two adult persons engaged. They were charged in the information on which they were tried with voluntary participation in an unnatural sex act in violation of Ark. Stat. Ann. § 41-813 (Repl. 1964).

The principal ground for reversal is that: the statute itself is an invasion of their right of privacy, which they allege to be protected by the First, Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments to the United States

Constitution; the statute is so vague and ambiguous as to deprive them of rights guaranteed by the state and federal constitutions; the application of the statute to them serves no legitimate state interest and that enforcement of the statute constitutes cruel and unusual punishment. Appellants introduce their argument with a statement that they do not suggest the statute be declared unconstitutional in every application. They contend it is "only unconstitutionally overbroad as applied to consenting adults because all persons who engage in acts of sodomy are subject to prosecution under the terms of the statute, including husband and wife, consenting adults of the opposite sex, or consenting adults of the same sex, regardless of whether the act is committed in public or in private."

The very strong presumption of constitutionality attendant upon every statute, requiring that all doubt be resolved in favor of constitutionality, is enhanced by the highly persuasive fact that the statute was long unassailed. See *Stone* v. *State*, 254 Ark. 566, 494 S.W. 2d 715; *Williams* v. *State*, 253 Ark. 973, 490 S.W. 2d 117; *Poole* v. *State*, 244 Ark. 1222, 428 S.W. 2d 628. As we said in *Williams*, if such a statute were in violation of federal constitutional principles, surely the thought would have long since occurred to the many legal scholars and jurists of this state. Appellants have not, by their multifaceted attack, met their very heavy burden of showing that this statute is unconstitutional.

We recently had occasion to consider and reject an attack on the constitutionality of this same statute in *Connor* v. *State*, 253 Ark. 854, 490 S.W. 2d 114. We do not agree with appellants that the difference in the two cases is sufficient to justify a re-examination of our holding there. We will turn our attention to arguments asserted as new and to alleged distinctions. Appellants allege a minor was involved and consent was not established in *Connor*. No point was made of the participation of the minor in reaching our conclusion in *Connor*. The mere fact that a participant is a minor does not prevent his consenting to the act. See *Strum* v. *State*, 168 Ark. 1012, 272 S.W. 359.

We can reject all cases cited by appellants relating to acts committed in private out of hand. No such act is involved here, in spite of a rather frail argument that the act, if committed, was done in the privacy of Carter's automobile in a secluded area of a roadside park. In our opinion, the record simply does not support the idea that the act was committed in private, or in a rather remote area of the roadside park. Officer Phillips testified that the area was well lighted, and it was unnecessary for one to use a flashlight to observe people in the cars. The area is only 120 to 140 yards off the main interstate highway. It is approximately 40 to 60 yards wide. Burkhead described the area as quite crowded. He said there were a lot of people around and that some of the many cars parked in the area were near the Carter automobile. No greater degree of privacy than that shown in *Connor* can be said to have existed here.

We can just as readily dismiss those cases based on conduct between married persons and those rendered in jurisdictions where a "non-criminal physical relationship of homosexual nature" was involved. We do not find anything in citations to various "sex manuals" (even though they may have been best sellers) to be of such compelling force or effect that we may take judicial notice of the supposed data, arguments and recommendations of the authors, the expertise of some of whom is at least questionable. We likewise find nothing which persuades us that the *Connor* decision was wrong. If the legislative branch should, in the exercise of its investigative powers, find these works credible in considering statutory revision, we would acknowledge not only that the matter is, but that it should be, within its province. See *People* v. *Hurd,* 5 Cal. App. 3d 865, 85 Cal. Rptr. 718 (1970); *People* v. *Ragsdale,* 177 Cal. App. 2d 676, 2 Cal. Rptr. 640 (1960); *People* v. *Massey,* 137 Cal. App. 2d 623, 290 P. 2d 906 (1955).

In some mystical manner, appellants have woven together various unrelated decisions as support for their argument that the statute is an overbroad invasion of their right to privacy. These decisions all struck down some act as unconstitutional, and include those having to do with the education of children, compulsory sexual steriliza-

tion of habitual criminal offenders, interracial marriage and sexual relations, access to contraception information, private possession of obscene materials, and abortions. As we understand appellants' argument, these cases lend support to their position because they demonstrate that the expansion of the "right to privacy in matters of intimate personal preference" is based upon the courts' having taken cognizance of dramatic changes in social conditions which have made legal doctrines once appropriate become unsuited for contemporary society. If social changes have rendered our sodomy statutes unsuitable to the society in which we now live, we need not be concerned about the matter because there is a branch of our government within whose purview the making of appropriate adjustment and changes peculiarly lies. Since that branch has not acted, we adhere to the views expressed in *Connor*.

Appellants' argument, that there is no legitimate state interest to be served by applying the sodomy statute to them, is hinged to a very great extent upon the contention that somehow the statute is constitutionally forbidden by that clause of the First Amendment to the Constitution of the United States prohibiting laws respecting establishment of religion. We rejected this argument in *Connor* and reject it here, and for the same reasons. The appellants additionally assert that the state must articulate the secular, social interests the statute under attack seeks to protect, suggesting that the failure to do so shows that the only purposes served do relate to establishment of religion. We do not think a recitation of purpose in the statute is necessary. Even if we should concede, and we do not, that the state had no interest in the suppression or minimization of sexual perversion, the condition existing at the time of this offense is illustrative of a valid state interest. Officer Phillips testified that the site is often frequented by children. The two male appellants, purportedly unacquainted, met there and in only a few minutes were in an automobile in the well lighted area enjoying fellatio. On cross-examination, Officer Phillips was asked to read his arrest report. It disclosed that this area, constructed for enjoyment and rest by travelers, had come to be frequented by homosexuals and that the sheriff's office had received many complaints of such acts being observed and of visitors being approached by homosexuals. This

is a clear and sufficient indication of the public interest to be served by the sodomy statute. People who come to such places for rest, recuperation and relaxation have a right to be unmolested, particularly by those in search of the exercise of their claimed right to sexual perversion, and should not expect to find in such havens as this the type of activities with which appellants were charged.

The police power is very broad and comprehensive and embraces maintenance of good order and quiet of the community, and preservation of the public morals. *Williams* v. *State,* 85 Ark. 464, 108 S.W. 838, 26 L.R.A. (n.s.) 482, 122 Am. St. Rep. 47, aff'd 217 U.S. 79, 30 S. Ct. 493, 54 L. Ed. 673, 18 Ann. Cas. 865; *City of Helena* v. *Dwyer,* 64 Ark. 424, 42 S.W. 1071. Under it, the legislature may, within constitutional limitations, prohibit all things hurtful to the comfort, safety and welfare of the people and prescribe regulations to promote the public health, morals and safety. *Wright* v. *DeWitt School District,* 238 Ark. 906, 385 S.W. 2d 644; *Williams* v. *State,* supra; *Dabbs* v. *State,* 39 Ark. 353, 43 Am. Rep. 275. In its exercise the legislature has a wide discretion in determining what the public interest demands and what measures are necessary to meet these requirements, and is limited only by the principle that its acts must reasonably *tend* to correct some evil and promote some interest of the commonwealth not violative of any direct, positive or necessarily implied constitutional mandate, or opposed to natural right and fundamental principles of civil liberty. *Wright* v. *DeWitt School District,* supra; *Fiser* v. *Clayton,* 221 Ark. 528, 254 S.W. 2d 315; *Dabbs* v. *State,* supra. See also, *City of Helena* v. *Dwyer,* supra. It is the duty of the courts to resolve all doubts in favor of the legislative action and to sustain it unless it appears to be clearly outside the scope of reasonable and legitimate regulation. *Williams* v. *State,* supra; *Dabbs* v. *State,* supra. In *Williams,* we found a legitimate state interest in prevention of annoyance to travelers by drummers soliciting for physicians, bath houses, hotels, etc.

In any event, we consider the sodomy statute to be a legitimate exercise of the police power by the General Assembly to promote the public health, safety, morals

and welfare. See *State* v. *Rhinehart*, 70 Wash. 2d 649, 424 P. 2d 906 (1967); *People* v. *Hurd*, 5 Cal. App. 3d 865, 85 Cal. Rptr. 718 (1970).

Although appellants nowhere state, as a point for reversal, that our sodomy statute is void for vagueness, they somehow weave such an assertion into their argument that the statute serves no legitimate state interest. It is sufficient to say that whenever the definition of general words in a criminal statute, passed pursuant to the police power, may be adequately determined through reference to judicial decisions construing the statute, it is not void for vagueness. See *State* v. *Anthony*, 179 Ore. 282, 169 P. 2d 587 (1946). In *Connor*, we found the definitions in *Strum* v. *State*, 168 Ark. 1012, 272 S.W. 359; *Mangrum* v. *State*, 227 Ark. 381, 299 S.W. 2d 80; *Havens* v. *State*, 217 Ark. 153, 228 S.W. 2d 1003; and *Smith* v. *State*, 150 Ark. 265, 234 S.W. 32, adequate to meet this challenge, if the statute were otherwise subject to attack on this score. We again reject this argument.

Appellants also argue that since a maximum sentence of 21 years may be imposed upon consenting adults for sodomy, and the maximum punishment for a husband and wife engaging in normal sexual intercourse under the same circumstances would constitute nothing more than disorderly conduct, enforcement of the statute constitutes cruel and unusual punishment. Appellants call our attention to Ark. Stat. Ann. §§ 41-1432, 41-1401 and 41-2701 (Repl. 1964). Assuming, without deciding, that these statutes, and only these, would apply in the postulated case, the greatest possible punishment would be a fine of $300 and a jail sentence of one year. In order to sustain appellants' argument here, whether it be based on cruel and unusual punishment or equal protection criteria, we would have to accept their arguments hereinabove rejected as a premise. This we cannot do. It is within the province of the legislative branch to classify crimes and determine the punishment therefor. *Stout* v. *State*, 249 Ark. 24, 458 S.W. 2d 42; *Thom* v. *State*, 248 Ark. 180, 450 S.W. 2d 550. No punishment authorized by statute, even though severe, is cruel and unusual unless barbarous or unknown to the law, or so wholly disproportionate to the nature of the offense as to shock the moral sense of the

community. *Davis* v. *State,* 246 Ark. 838, 440 S.W. 2d 244. We cannot say that either appellants' eight-year sentence or the 21-year maximum fails to meet any of these tests for constitutionality.

It is a long-standing rule of this court, and generally of other courts, that in order for one to have standing to challenge the constitutionality of a legislative act, the act must be unconstitutional as applied to him. If appellants' attack, as stated and restated by them, is hinged, in substantial part, upon the assertion that the statute draws no distinction between acts committed in public and acts committed in private, the very absence of the element of privacy of the act should deprive appellants of any standing to question the constitutionality of the statute. Certainly they have no standing to challenge its constitutionality as applied to husband and wife or consenting adults of opposite sexes. See *May* v. *State,* 254 Ark. 194, 492 S.W. 2d 888; *Connor* v. *State,* supra; *Lienhart* v. *Burton,* 207 Ark. 536, 181 S.W. 2d 468; *Connor* v. *Blackwood,* 176 Ark. 139, 2 S.W. 2d 44; *Ferguson* v. *Hudson,* 143 Ark. 187, 220 S.W. 306. See also, *City of Ft. Smith* v. *Scruggs,* 70 Ark. 549, 69 S.W. 679, 58 L.R.A. 921, 91 A.S.R. 100.

We have held that a statute long in existence, under which many cases have been prosecuted and its validity inferentially sustained, should not be held invalid except for very cogent reasons and, then, only on the attack of one injuriously affected by it. *Swaim* v. *State,* 184 Ark. 1107, 44 S.W. 2d 1098. Here we do not find cogent reasons to invalidate this act, which has existed for over 100 years, except for a reduction of the minimum punishment in 1955, and under which many prosecutions have been sustained. We further find that appellants have not been injuriously affected by its application.

We note that there are other jurisdictions which have rejected similar assaults on the constitutionality of such acts. See, e.g., *Everette* v. *State,* 465 S.W. 2d 162 (Tex. Cr. App. 1971); *Pruett* v. *State,* 463 S.W. 2d 191 (Tex. Cr. App. 1970); *State* v. *White,* 217 A. 2d 212 (Me. 1966); *State* v. *Rhinehart,* 70 Wash. 2d 649, 424 P. 2d 906 (1967); *People*

v. *Hurd,* 5 Cal App. 3d 865, 85 Cal. Rptr. 718 (1970);
*People* v. *Roberts,* 256 Cal. App. 2d 488, 64 Cal. Rptr. 70
(1967); *People* v. *Ragsdale,* 177 Cal. App. 2d 676, 2 Cal.
Rptr. 640 (1960); *People* v. *Massey,* 137 Cal. App. 2d 623,
290 P. 2d 906 (1955); *Washington* v. *Rodriguez,* 82 N.M.
428, 483 P. 2d 309 (Ct. App. 1971); *Jaquith* v. *Common-
wealth,* 331 Mass. 439, 120 N.E. 2d 189 (1954).

We find no error in the trial court's sustaining the
prosecuting attorney's objection and motion to strike
testimony of the professed fiancee of Burkhead in re-
sponse to the question "Have you ever known Tom Burk-
head to have any tendencies toward being a homosexual?"
We do not take this response to be a statement of the
witness' opinion of either the physical or mental con-
dition of Burkhead, as argued by appellants. The inquiry
is more nearly equated with one as to this appellant's
character. We have defined character to be "what a person
is" and to include natural and acquired traits. *Biddle* v.
*Riley,* 118 Ark. 206, 176 S.W. 134. Proof of character can-
not be made except by showing general reputation and
not by specific acts or conduct. In *Henson* v. *State,* 239
Ark. 727, 393 S.W. 2d 856, the defendant presented the
testimony of three young women, each saying that she
had been alone with the defendant and he had never at-
tempted to make any advance to her. The state rebutted
this testimony by testimony of two other women that de-
fendant had raped them. This court reversed the convic-
tion, saying that none of the women should have been
allowed to testify, because their testimony constituted
an effort to show the character of the defendant by specific
acts and was, therefore, erroneously admitted. We said
that the evidence offered by the defendant was clearly in-
admissible. The analogy is certainly sufficient to justify
the exclusion of this testimony in the case before us.

In addition, however, we find authorities in other
states have treated the particular question directly. In
*Berger* v. *State,* 179 Md. 410, 20 A. 2d 146 (1941), the
refusal to permit the wife of a defendant charged with an
unnatural and perverted attack on another woman to be
asked if her husband had ever shown any sexual abnor-
malities was held proper. In *State* v. *Sinnott,* 24 N.J. 408,

132 A. 2d 298 (1957), a sodomy case, the court refused to allow psychiatric testimony that the defendant did not have sexual deviate traits. Both courts held that such inquiries went to the character of the defendant, which could be proved only by general reputation of the accused and not by evidence of particular acts or conduct or testimony of intimates. Attempted showing of good character of one charged with taking indecent liberties with females under the age of 15, by showing a lack of previous incidents, was also held improper in *State* v. *Fairbanks,* 25 Wash. 2d 686, 171 P. 2d 845 (1946). We find ample authority for the rejection of the testimony in the cases cited and find textual support in 22A C.J.S. 898, Criminal Law, § 691 (39).

Appellants also assert that reversible error was committed by the prosecuting attorney in cross-examining Carter, and that their motion for mistrial on that ground was erroneously denied. The questioned interrogatory was asked after Carter had declined to answer when asked if he was a homosexual unless the word be defined by the questioner. When this occurred the cross-examiner propounded and received a negative answer to the following question:

> . . . Is it not a fact, and I want to remind you that you are under oath now; is it not a fact that in another matter in this very court room, on that stand, that you testified under oath that you were, and are, a homosexual?

At the outset we do not agree with appellants that this form of question constitutes a stronger assertion of fact than it would had it begun with the words "Did you know that . . .?" We do not consider the question as worded to constitute an assertion of fact at all, particularly since the matter was not pursued when a negative answer was given. Neither do we agree that there is any assertion that Carter was involved in another prosecution. "[A]nother matter in this very court, on that stand" could as easily be taken to refer to a civil case as to a criminal one, and if taken to be the latter, to the prosecution of someone other than Carter.

In the light of Carter's evasion of preceding questions, we find no error here. Carter was subject to the same latitude of cross-examination as any other witness. But appellants contend that Carter could be impeached only under Ark. Stat. Ann. §§ 28-707 and 708 (Repl. 1962). Appellants misapprehend the proper application of these statutes. They are only a limit on the introduction of evidence to impeach or contradict the witness, but not upon his cross-examination. See *Wilson* v. *Thurston National Insurance Company,* 251 Ark. 929, 475 S.W. 2d 881; *Bockman* v. *Rorex,* 212 Ark. 948, 208 S.W. 2d 991. These statutes probably would have come into play had the state attempted to contradict the negative answer given by Carter. See *Holcomb* v. *State,* 218 Ark. 608, 238 S.W. 2d 505; *Bockman* v. *Rorex,* supra.

Appellants argue that there was reversible error in that the trial judge, court reporter and counsel for both state and appellants went into the jury room for the purpose of answering an inquiry by jurors. We hasten to point out that this occurred before our decision in *Martin* v. *State,* 254 Ark. 1065, 497 S.W. 2d 268. The record discloses an identical procedure here and in *Martin.* We hold that the error was not reversible on the authority of *Martin.* We trust that the caveat there is adequate to point up the hazards involved in such a procedure, and are confident that resort will not be had to it in the future.

Since appellants have failed to demonstrate that there was any reversible error, the judgment is affirmed.