WRIGHT v. DeWITT SCHOOL DISTRICT.

5-3408                                   385 S. W. 2d 644

Opinion Delivered January 11, 1965

Tom Gentry, for appellant.

Macom & Moorhead, for appellee.

FRANK HOLT, Associate Justice. The issue presented, in this case is whether a state health regulation is in conflict with freedom of religion as ordained by the First Amendment to the Constitution of the United States.

The appellants, adults and school age children, are members of a church known as the General Assembly and Church of the First Born. The appellee, DeWitt School District #1 of Arkansas County, pursuant to a state health regulation, required all students to be vaccinated against smallpox as a prerequisite to attending the school. This requirement contravenes appellants' religious beliefs. As a result the appellants instituted this action to enjoin the appellee school district from enforcing this regulation as to themselves and other similarly situated, alleging that such regulation would require appellants to do an act opposed to their religious beliefs and is in violation of their religious freedom as guaranteed by the First Amendment to our Federal Constitution; that the school age appellants had been attending the schools operated by appellee for many years without being vaccinated and as a result no one had suffered any adverse effect; that there had been no smallpox in Arkansas County for more than fifty years and that no immediate, grave or present danger existed which justified any infringement upon their constitutional right of the free exercise of their religious views. This appeal is from the decree of the chancellor sustaining appellee's demurrer and dismissing the complaint.

The sole point relied upon by appellants for reversal is that: ''These appellants may not be required to

submit to vaccination as a prerequisite to attend the schools operated by appellee under the facts in this case as such would be in violation of their rights of the free exercise of their religion as guaranteed to them by the First Amendment to the Constitution of the United States.''

We think the chancellor was correct in sustaining the demurrer and dismissing the complaint. The appellants do not have the legal right to resist on religious grounds the enforcement of this health regulation requiring the vaccination of all children as a prerequisite to attendance of the schools operated by the appellee. *Cude* v. *State,* 237 Ark. 927, 377 S. W. 2d 816. There we held:

''* * According to the great weight of authority, it is within the police power of the State to require that school children be vaccinated against smallpox, and that **such requirement does not violate the constitutional rights of anyone, on religious grounds or otherwise.** In fact, this principle is so firmly settled that no extensive discussion is required.''

The questioned state health measure, quoted in the *Cude case,* is Regulation #21, Rules and Regulations Pertaining to Communicable Diseases, 1960 Revision, approved by the State Board of Health July 28, 1960. The State Health Department has the authority to promulgate health regulations having the effect of law for the purpose of efficiently controlling communicable diseases. Ark. Stat. Ann. § 82-109—110 (Repl. 1960). We have long recognized the health regulation requiring vaccination of all school children as being a valid exercise of the police power of the state. *State* v. *Martin,* 134 Ark. 420, 204 S. W. 622; *Seubold* v. *Fort Smith Special School Dist.,* 218 Ark. 560, 237 S. W. 2d 884.

It is well settled that a demurrer admits facts *well pleaded* in a complaint. Therefore, appellants argue their allegation that no immediate, grave or present danger exists must be taken as true since the appellant children have been attending school without being vaccinated and no case of smallpox has occurred in Arkansas County for more than fifty years. Appellants insist

that these elements of imminent danger must exist before there can be any valid interference with their religious liberties and that the trial court should have overruled the demurrer and required such proof. We do not agree with this contention. *Seubold* v. *Fort Smith Special School District, supra.*

It is well known that smallpox is a contagious disease which is a scourge to mankind. Furthermore, it cannot be said that the boundaries of a county present any barrier to the spread of this infectious disease. Our courts, both state and federal, take judicial notice of the very nature of this loathsome disease and that it presents a clear and ever present danger which is best controlled by health measures such as the one in question. In *Cude* v. *State,* supra, we said:

"It is a matter of common knowledge that prior to the development of protection against smallpox by vaccination, the disease, on occasion, ran rampant and caused great suffering and sickness throughout the world."

In *Jacobson* v. *Massachusetts,* 197 U. S. 11, 25 S. Ct. 358, 49 L. Ed. 643 it was argued, as in the case at bar, that the court erred in sustaining the demurrer to the complaint questioning the validity of a health regulation. There the state put in evidence only the health regulation requiring vaccination and that the offer of free vaccination was made to the appellant. The appellant made various offers of proof, none of which were allowed by the court. Appellant offered to submit proof that three-fourths of the states did not require vaccination; that "Smallpox has ceased to be the scourge which it once was,"; that "The states which make no provision for vaccination are not any more afflicted with smallpox than those which compel vaccination,"; and that "The Board of Health is entrusted with arbitrary power, and determines the necessity for, and methods of, vaccination". In rejecting all of these contentions and upholding the trial court's refusal of this proffered proof the court said:

"* * If the defendant had been permitted to introduce such expert testimony as he had in support of these several propositions, it could not have changed the result. It would not have justified the court in holding that the legislature had transcended its power in enacting this statute on their judgment of what the welfare of the people demands. * * * According to settled principles the police power of a State must be held to embrace, at least, such reasonable regulations established directly by legislative enactment as will protect the public health and the public safety.''

Thus, the courts are not required to listen to conflicting evidence as to the need of vaccination against smallpox. The legislature, acting through its duly constituted agency, is the proper forum to determine by a reasonable enactment what the health, morals and safety of the public require for the common good.

Also, in *Jacobson* the court took judicial notice of the need for vaccination:

''A common belief, like common knowledge, does not require evidence to establish its existence, but may be acted upon without proof by the legislature and the courts. * * * While we do not decide and cannot decide that vaccination is a preventive of smallpox, we take judicial notice of the fact that this is the common belief of the people of the State, and with this fact as a foundation we hold the statute in question is a health law, enacted in a reasonable and proper exercise of the police power.''

The authority to supervise and control the activities of children is broader than that over similar actions of adults. *Prince* v. *Massachusetts,* 321 U. S. 158, 64 S. Ct. 438, 88 L. Ed. 645. In that case a child labor law was upheld against the claim that it impinged upon the First Amendment. There the child was distributing magazines of a religious nature. The court said:

''But the family itself is not beyond regulation in the public interest, as against a claim of religious liberty. *Reynolds* v. *United States,* 98 U. S. 145; *Davis* v. *Beason,*

133 U. S. 333. And neither rights of religion nor rights of parenthood are beyond limitation. Acting to guard the general interest in youth's well being, the state as parens patriae may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor and in many other ways. Its authority is not nullified merely because the parent grounds his claim to control the child's course of conduct on religion or conscience. *Thus, he cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds. The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death.*" [Emphasis added]

In *Zucht* v. *King,* 260 U. S. 174, 43 S. Ct. 24, 67 L. Ed. 194, the court held that a city ordinance that made vaccination a prerequisite to school attendance did not impinge upon the Fourteenth Amendment to our Federal Constitution. There the court said:

"* * Long before this suit was instituted, *Jacobson* v. *Massachusetts,* 197 U. S. 11, had settled that it is within the police power of a State to provide for compulsory vaccination. That case and others had also settled that a State may, consistently with the Federal Constitution, delegate to a municipality authority to determine under what conditions health regulations shall become operative."

In that case, as in the case at bar, a demurrer was sustained to the suit to enjoin the enforcement of the ordinance.

Appellants rely upon *West Virginia* v. *Barnette,* 319 U. S. 624, 63 S. Ct. 1178, 87 L. Ed. 1628, and *Sherbert* v. *Verner,* 374 U. S. 398, 83 S. Ct. 1790, 10 L. Ed. 2d 965. In the *Barnette case* the supreme court struck down a state law requiring students to salute the flag and recite the pledge of allegiance as being an unnecessary invasion of the right of free speech. In the *Sherbert case* the court upheld the right of a member of the Seventh-day Adventist Church to be eligible for unemployment compen-

sation although she refused to work on Saturday which was in violation of her religious beliefs. The activities sought to be regulated in both of these cases had nothing to do with public health measures. We do not construe these cases as being applicable to the facts in the case at bar.

There is no necessity for unduly lengthening this opinion by again reviewing the numerous cases cited by us in the *Cude case* holding that rights of religious freedom cease when they transgress upon the rights of others. This principle is well expressed in *U. S.* v. *Willard,* 211 F. Supp. 643 (Ohio 1962) where the court said:

"[12] Under the First Amendment of our Constitution, freedom to believe in and to adhere to one's chosen form of religion cannot be restricted by law, but freedom to act in accordance with one's religious beliefs necessarily 'remains subject to regulation for the protection of society.' *Cantwell* v. *State of Connecticut,* 310 U. S. 296, 303, 304, 60 S. Ct. 900, 903, 84 L. Ed. 1213."

Another recent case resolving the conflict between religious freedom and the rights of society as a whole is *In Re Jenison,* 120 N. W. 2d 515 (Minn. 1963). There the court held that a woman juror was not relieved of jury duty because it conflicted with her religious beliefs in the Biblical stricture "judge not, that you will not be judged". The court said that "refusal to serve is inconsistent with the peace and safety of the state." In *Crowley* v. *Christensen,* 137 U. S. 86, 11 S. Ct. 13, 34 L. Ed. 620, the court aptly said:

"But the possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community. Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's own will. It is only freedom from restraint under conditions essential to the equal enjoyment of the same right by others. It is then liberty regulated by law."

Appellants are at liberty to enjoy unrestrained their religious opinions and beliefs. However, their freedom to act according to their religious beliefs is subject to a reasonable regulation for the benefit of society as a whole. We affirm that the health regulation in question is a reasonable exercise of police power on a subject of paramount and compelling state interest and, therefore, is valid.

The decree is affirmed.