David F. Lee, Jr., J.
In this action for declaratory judgment and injunction defendants move to dismiss plaintiffs ’ complaint on the ground that “ the pleading fails to state a cause of action” (CPLR 3211, subd. [a], par. 7), and for summary judgment pursuant to CPLR 3212. The plaintiffs, by way of cross motion, move for summary judgment.
The infant plaintiff Thomas E. McCartney II who resides with his parents in the Maine-Endwell School District, not having been immunized against poliomyelitis in accordance with section 2164 of the Public Health Law, was refused admittance to the sixth grade class at the Maine-Endwell School *526 in September 1967. Home tutoring was furnished by the School District until sometime late in December, 1967. The home teaching was furnished ‘ ‘ pending the determination by the Family Court of Dutchess and Steuben Counties holding the section constitutional ”. In January, 1968 a summons was served on the plaintiff Thomas E. McCartney in a proceeding in Family Court, Broome County, in which he was charged with having neglected a child under the age of 16 years, the infant plaintiff, in failing to have the child immunized. The proceeding in Family Court has, by order of the Family Court Judge, been stayed and the infant admitted to class, pending the disposition of this action.
The plaintiffs in their action seek judgment declaring:
‘ ‘ 1. That Section 2164 of the Public Health Law of the State of New York is illegal, invalid and unconstitutional and is not binding upon the plaintiffs.
“ 2. That the defendants, and all officers and agents thereof, be restrained from interfering with the attendance of Thomas E. McCartney II at the Maine-Endwell School and that they be ordered to admit him to sixth grade thereof.”
The Attorney-General, pursuant to CPLE 1012 (subd. [b]), has been notified of this action and the motions and elected not to intervene. However, a brief has been submitted by the Attorney-General in his statutory capacity under section 71 of the Executive Law in support of the constitutionality of section 2164 of the Public Health Law.
Section 2164 of the Public Health Law, entitled ‘ ‘ Definitions; immunization against poliomyelitis ”, which became effective January 1, 1967, provides, in part:
‘ ‘ 2. Every person in parental relation to a child in this state shall have administered to such child an adequate dose or doses of an immunizing agent against poliomyelitis which meets the standards approved by the United States public health service for such biological products, and which is approved by the state department of health.
* * *
‘ ‘ 5. The physician who administers such immunizing agent against poliomyelitis to any such child shall submit a certificate of such immunization to the local health officer and shall give a copy of the same to the person in parental relation to such child.
“6. No principal, teacher, owner or person in charge of a school shall permit any child to attend such school without the certificate provided for in subdivision five of this section or *527 some other acceptable evidence of the child’s immunization against poliomyelitis.
“ 7. If any physician licensed to practice medicine in this state certifies that such immunization may be detrimental to a child’s health, the requirements of this section shall be inapplicable until such immunization is found no longer to be detrimental to the child’s health.
“ 8. This section shall not apply to children whose parent, parents, or guardian are bona fide members of a recognized religious organization whose teachings are contrary to the practices herein required, and no certificate shall be required as a prerequisite to such children being admitted or received into school or attending school.”
The complaint alleges, inter alia:
“ 5. That the defendants have on numerous occasions been requested to admit the plaintiff, Thomas E. McCartney II to his sixth grade class but the defendants have refused and still refuse to do so.
* * *
“ 8. That by reason of the enforcement of the said Statute the plaintiff Thomas E. McCartney II is being deprived of attending school contrary to his absolute right to a primary education in the State of New York.
“ 9. That the said Statute is unconstitutional, illegal and invalid in that the same was enacted without regard to the plaintiff’s individual rights and in fact is discriminating on its face.
“ 10. That said Statute violates Articles of the Constitution of the State of New York and Constitution of the United States which Articles in substance forbid the passage of any law which abridges the privileges or immunities of citizens of the United States; or which denies equal protection of the law; or which discriminates or prefers one religious profession over another; or which deprives a citizen of his vested rights without due process of law; that by reason of the foregoing facts and circumstances, the plaintiff, Thomas E. McCartney II has been deprived of attending school and because of his religion he has been denied the equal protection of the law; and as a result he is not receiving the education he has a right to and which is necessary in order to provide him with those requirements that will insure a more fruitful life. ’ ’
The affidavit of the plaintiff Thomas E. McCartney submitted on these motions states:
‘ ‘ 7. Deponent has strong convictions about having his son inoculated against poliomyelitis. Although the legislature *528 has concluded that no one has ever contracted paralytic polio from an immunization dose, deponent is familiar with several cases in another country where such an event occurred. In addition, there may be some other reaction of the body to such inoculation and deponent is unwilling to risk his son’s well-being on medical theory which has not been proven infallible. The ‘ fallibility ’ of medical ‘ science ’ has been proven many times in the past.
11 8. There are many other children not only in the MaineEndwell School District, but in other School Districts as well, who have not yet been adequately immunized against polio and yet, these children have been allowed to continue attending school. Deponent and his son are both being prejudiced because of deponent’s unequivocal position on polio immunization — a position he had made known before the current school year commenced. In other School Districts where compulsory immunization has been challenged, the child was still allowed to attend school. Deponent’s son is and always has been healthy. He was able to attend school the first half of 1967 without contracting polio. He did not spread such a disease to others. Deponent knows of no case in the Maine-Endwell School District where someone has contracted polio in the last ten years. If deponent were a member of the Christian Scientist Faith, his son would be completely exempt from the immunization requirement. It is not clear to deponent how a religious faith can affect a purported health requirement. It would mean that if deponent now converted to the Christian Scientist religion, his son would then be 1 acceptable ’ under the standards of the Statute.
“9. Deponent’s faith is Roman Catholicism — a faith which does not have any proscriptions against inoculation, but it does require that one follow his moral convictions. It is deponent’s deep moral conviction that his son should not receive compulsory immunization and he believes the law is unjust in requiring it. That the law is further unjust in allowing members of a particular faith to avoid the Statute while not according the right of such avoidance to others.
“ 10. Deponent’s son, Thomas E. McCartney II, has not attended school since September 7, 1967. He does not believe it is fair to the boy who is only ten years old, to be deprived of his rightful education pending the determination of the Statute’s constitutionality. What possible harm could be caused by allowing him to continue in school? There is no present danger — he is a very healthy boy. Other school districts have allowed the attendance in similar situations. And *529 again, should deponent convert to a particular religious belief, somehow, as if by magic, deponent’s son would be ‘ clean ’ and incident.”
welcome to the school. Deponent also is aware of other children in the School District who have not been adequately immunized and yet these children are allowed to attend school without
A letter “ To Whom It May Concern ”, dated September 8, 1967, signed by “ Dr. Thomas E. McCartney, Chiropractor ” and “ Mrs. Eleanor M. McCartney ”, a copy of which is attached to defendants’ answer, states:
‘ ‘ I am a bonafide member of a recognized religious organization whose teachings prohibit the violation of my conscience and all beliefs.
‘ ‘ I am conscientiously and morally opposed to having my children inoculated against polio.
“I am asking that this letter be excepted (sic) as in compliance with section eight of the Public Health Law 2168 (sic).”
Defendants’ answer, in addition to alleging general denials, alleges as an affirmative defense:
“ fourth : That the grounds for the refusal of the defendants to admit the plaintiff Thomas E. McCartney II to school on September 8, 1967, was based solely upon the ground that said plaintiff Thomas E. McCartney II had not been and that the plaintiff Thomas E. McCartney, the father of said child, refused and still refuses to have his said son immunized by being vaccinated against poliomyelitis.
‘1 fifth : That Section 2164, subdivision 6, of the Public Health Law specifically prohibits any principal, teacher, or other person from permitting said child to attend school without being immunized against poliomyelitis in accordance with said section.
1 ‘ sixth : That the defendants did advise the plaintiff that he was required to have his child immunized against poliomyelitis on numerous occasions in the year 1967 and demand that the plaintiff Thomas E. McCartney have said child immunized so that said child may be admitted to the school.
‘1 seventh : That the plaintiffs are bona fide members of the Roman Catholic Church whose teachings are not contrary to the practice of inoculation as required by Section 2164 of the Public Health Law.”
In briefs submitted on behalf of plaintiffs in support of their motion for summary judgment it is noted that: “ In the case at bar, Plaintiff is attacking solely the constitutionality of Public Health Law #2164 ” and that “ plaintiff contends that Public Health Law Article 21, Section 2164, is unconstitutional as it violates the 14th, 9th, 1st and 5th amendments to the United *530 States Constitution, as well as Article One of the New York State Constitution.”
The brief submitted by the Attorney-General states: “ [T]he plaintiff’s attack upon the statutory exemption presents a purely moot issue. Even if the exemption were invalidated, the general requirement of immunization would not be affected. Public Health Law, § 5000, provides that if any part of the Chapter is held invalid (including ‘ any clause ’, ‘ sentence ’ or ‘ paragraph’), such judgment ‘ shall be confined in its operation to the clause, sentence * * * or part thereof directly involved * * *. ’ It follows that if the statutory exemption were invalidated, the plaintiff would be compelled to have his children vaccinated in any event. Under such circumstances, the validity of the exemption for religious groups is necessarily moot and nonjusticiable.”
With this contention, that ‘ ‘ the validity of the exemption for religious groups is necessarily moot and nonjusticiable ” because of the “ separability clause ” provided in the Public Health Law, this court disagrees; the questions presented on these motions are properly before the court, and should be determined.
The question for determination on the defendants’ motion pursuant to CPLR 3211 (subd. [a], par. 7) is whether the complaint states a cause of action and not whether the plaintiffs have any substantial hope of proving one. The pleadings on such a motion are to be liberally construed, factual averments of the complaint are taken as true, and the court must give the plaintiffs the benefit of all reasonable inferences therefrom. CPLR 3211 (subd. [c]) provides that upon the hearing of a motion under subdivision (a), either party may submit any evidence that could properly be considered on a motion for summary judgment and the court may treat the motion as a motion for summary judgment.
The plaintiffs, as well as the defendants, move for summary judgment pursuant to CPLR 3212, which provides in subdivision (b), in part: “ The motion shall be granted if, upon all the papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of any party. The motion shall be denied if any party shall show facts sufficient to require a trial of any issue of fact ”.
Here we have the constitutionality of a statute challenged, and at the outset it should be noted that legislative acts carry a strong presumption of constitutionality (Paterson v. University of State of N. Y., 14 N Y 2d 432, 438), and the unconstitutionality of an act must be demonstrated beyond a reasonable *531 doubt (Matter of Van Berkel v. Power, 16 N Y 2d 37, 40; see, also, McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 150).
In Defiance Milk Prods. Co. v. Du Mond (309 N. Y. 537, 540-541), Judge Desmond, with reference to the constitutionality of a statute, noted that: ‘ ‘ The applicable rules of law are well known. Every legislative enactment carries a strong presumption of constitutionality including a rebuttable presumption of the existence of necessary factual support for its provisions (Borden’s Co. v. Baldwin, 293 U. S. 194, 209, 210). If any state of facts, known or to be assumed, justify the law, the court’s power of inquiry ends .(United States v. Carolene Products Co., 304 U. S. 144, 154). Questions as to wisdom, need or appropriateness are for the Legislature (Olsen v. Nebraska, 313 U. S. 236, 246). Courts strike down statutes only as a last resort (Matter of Ahern v. South Buffalo Ry. Co., 303 N. Y. 545, 555, affd. 344 U. S. 367) and only when unconstitutionality is shown beyond a reasonable doubt (Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 79; Matter of Fay, 291 N. Y. 198, 206, 207). But, for all that, due process demands that a law be not unreasonable or arbitrary and that it be reasonably related and applied to some actual and manifest evil (Matter of Jacobs, 98 N. Y. 98, 110; Fisher Co. v. Woods, 187 N. Y. 90; Nebbia v. New York, 291 U. S. 502). And even though a police power enactment may have been or may have seemed to be valid when made, later events or later-discovered facts may show it to be arbitrary and confiscatory (Abie State Bank v. Bryan, 282 U. S. 765, 772).”
It should also be noted that on a motion for summary judgment ‘1 ‘ issue-finding, rather than issue-determination, is the key to the procedure ’ ”. '(Sillman v. Twentieth Century-Fox Film Corp., 3 N Y 2d 395, 404, mot. for rearg. den. 3 N Y 2d 941.) The plaintiffs and the defendants have moved for summary judgment. The parties correctly assert that the motions involve only questions of law. The court concludes that the pleadings, affidavits and other papers submitted upon these motions demonstrate that there is no triable issue of fact presented upon these motions for summary judgment.
Plaintiffs ’ complaint, as noted, alleges: ‘ ‘ That the said Statute is unconstitutional, illegal and invalid in that the same was enacted without regard to the plaintiff’s individual rights and in fact is discriminating on its face.” The affidavit of the plaintiff Thomas E. McCartney states: “ 9. Deponent’s faith is Roman Catholicism — a faith which does not have any proscriptions against inoculation, but it does require that one follow his moral convictions. It is deponent’s deep moral conviction that *532 his son should not receive compulsory immunization and he believes the law is unjust in requiring it. That the law is further unjust in allowing members of a particular faith to avoid the Statute while not according the right of such avoidance to others.”
Basically the questions presented upon the pleadings and papers submitted are: (1) whether the statute in question interferes with the free exercise of plaintiffs’ religious belief and right to worship according to the dictates of their conscience; (2) whether the statute is discriminatory, whether it discriminates between religious beliefs, and (3) whether plaintiffs are, or the infant plaintiff is, entitled to an exemption under subdivision 8 of the section because the father’s moral conviction or conscience is opposed to inoculation and compulsory immunization.
Both the Constitution of the United -States (1st Arndt.) and of the State of New York (art. I, § 3) protect religious liberty and freedom of worship. It is well settled that the First Amendment, which prohibits Congress from enacting any ‘ ‘ law respecting an establishment of religion, or prohibiting the free exercise thereof ’ ’, has been incorporated into the Fourteenth Amendment as a prohibition against the States (Cantwell v. Connecticut, 310 U. S. 296; Matter of Brown v. McGinnis, 10 N Y 2d 531, 534-535). The New York State Constitution granting freedom of religious worship says, in part: “the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of this state.”
In Jacobson v. Massachusetts (197 U. S. 11), certain statutes of Massachusetts were sustained which provided for compulsory vaccination upon the finding by local boards of health that such action was necessary for the public health. The constitutionality of the act was upheld. In Matter of Viemeister (179 N. Y. 235), the question presented was whether the Legislature was prohibited by the Constitution from enacting that such children as have not been vaccinated shall be excluded from the public schools. There it was claimed that the Public Health Law placed an unreasonable restriction upon the right of a child to attend school and that it violated the Constitution (art. IX, § 1, now art. XI, § 1), as well as the general guarantees for the protection of the rights, privileges and liberties of the citizen. There the court concluded (pp. 241-242) that “No right conferred or secured by the Constitution was violated by that law or by the action of the school authorities based thereon.”
*533 In a memorandum submitted by plaintiffs’ counsel it is stated: “ With the phrase * church and state ’ we think immediately of conflict, of opposing demands for man’s loyalty. Man’s dedication has often been torn between God and country, religious faith and patriotism. Church and state have been the most significant institutions within which Western man has lived, but struggle has ensued between them because each has tended to make absolute claims. In Revelation and I Peter, the New Testament reflects the first Christian conflict with the state, when the primitive Christian church denounced as idolatry the claim of the Post Augustan Roman Empire that final authority lay in a deified emperor. In the twentieth century, with its Nazi and Communist persecution of religion, three fundamental elements have played important roles: The attitude of government toward religion, the attitude of religion toward government, and the policy of harmony or conflict. Under our form of constitutional government, a flexible system of separation, enunciated by the American Constitution, prevents special privileges while preserving the way of religious life free from governmental interference — in effect, a wall of separation to protect religion from political or ecclesiastical totalitarianism.”
The Court of Appeals in Matter of Zorach v. Clauson (303 N. Y. 161, 171-172, affd. 343 U. S. 306), writing of the “ ‘ wall of separation ’ between church and state ’ ’, said:
“No metaphorical 1 wall ’ that mere words can build ever precisely and mathematically delineates a constitutional right. The Supreme Court has recognized in a religious freedom case, that to ‘ make accommodation between these freedoms ’ guaranteed by the First Amendment and 1 an exercise of state authority ’ is always ‘ delicate ’ (Prince v. Massachusetts, 321 U. S. 158, 165). Such freedoms are not absolute (Prince v. Massachusetts, supra, p. 166; Dennis v. United States, 341 U. S. 494; Breard v. Alexandria, 341 U. S. 622; Schenck v. United States, 249 U. S. 47). * * * Very recently, in upholding the Sunday law, we have recognized that separation of church and State does not mean that every State action remotely connected with religion must be outlawed (People v. Friedman, 302 N. Y. 75, appeal dismissed for want of a substantial Federal question, 341 U. S. 907).
# # *
‘ ‘ ‘ the public interests imperatively demand —■ that legislative enactments should be recognized and enforced by-the courts as embodying the will of the people, unless they are plainly and palpably, beyond all question, in violation of the fundamental law of the Constitution ’ (Atkin v. Kansas, 191 U. S. 207, 223).”
*534 In the affidavit of the plaintiff Thomas E. McCartney he speaks of “ his moral convictions ” and in the letter of September 8,1967 states that he is “ a bonafide member of a recognized religious organization whose teachings prohibit the violation of my conscience and all beliefs.”
Judge Lehman in an opinion, “concurring in result ”, in People v. Sandstrom (279 N. Y. 523, 535-537), wrote:
‘ ‘ Religious freedom guaranteed by the Constitution is broader than the principle that 1 people may worship as they please or need not worship at all. ’ It includes the right of the individual to carry out every obligation which he believes has a divine sanction, ‘ to practice any religious principle, and to teach any religious doctrine which does not violate the laws of morality and property, and which does not infringe personal rights.’ (Watson v. Jones, 80 U. S. 679, at 728.) * * * ‘ The term “ religion ” has reference to one’s views of his relations to his Creator, and to the obligations they impose of reverence for his being and character, and of obedience to his will. * * * With man’s relations to his Maker and the obligations he may think they impose, and the manner in which an expression shall be made by him of his belief on those subjects, no interference can be permitted, provided always the laws of society, designed to secure its peace and prosperity, and the morals of its people, are not interfered with. ’ (Davis v. Beason, 133 U. S. 333, at 342.) There are many acts which are not acts of worship and which for most men have no religious significance and are entirely unrelated to the practice of any religious principle or tenet but which may involve a violation of an obligation which other men may think is imposed upon them by divine command or religious authority.' To use a homely illustration, partaking of food is ordinarily in no sense ‘ any approach to a religious observance.’ It is purely mundane, with no religious significance, and yet ordinances establishing fast days or prohibiting the use of certain kinds of foods are a part of the religion of many people. Interference by the State with such religious ordinances; commands by the State or its officers to violate these ordinances, can be justified only where observance of the religious ordinances obstructs 1 the laws of society designed to secure its peace and prosperity, and the morals of its people.’
* e #
“ ‘ The 'Constitution of the State in guaranteeing liberty of conscience has expressly imposed the same limitations upon its exercise which are implied in the guaranty contained in the Federal Constitution. It ‘ shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the *535 peace or safety of this State. ’ (Art. 1, § 3.) The words ‘ inconsistent with the peace or safety of this 'State ’ should not, I agree, be limited too closely. It has been said by Chief Justice Hughes, with the concurrence of Mr. Justice Holmes, Mr. Justice Brandéis and Mr. Justice .Stone, that ‘ The battle for religious liberty has been fought and won with respect to religious beliefs and practices, which are not in conflict with good order, upon the very ground of the supremacy of conscience within its proper field. What that field is, under our system of government, presents in part a question of constitutional law and also, in part, one of legislative policy in avoiding unnecessary clashes with the dictates of conscience.’ (United States v. Macintosh, 283 U. S. 605, at 634.) There is no need here to attempt to mark the exact limits of governmental powers in constraint of conscience. Certainly such governmental powers may not at their widest be asserted to prohibit beliefs and practices which are not in conflict with good order or to compel acts which have no reasonable relation to the peace or safety or even the general welfare of the State or Nation.”
That there is a distinction between moral conviction and conscience by reason of religious training, belief and conviction, on the one hand, and personal moral code or philosophy not based on or by reason of religious training, belief or conviction, on the other, and what the distinction is, need not, on the pleadings and papers submitted on these motions, be further pointed out nor elaborated upon.
Plaintiffs’ counsel urges that the word “ teachings ” as used in subdivision 8 of section 2164 of the Public Health Law is “ vague, uncertain and ambiguous ” and thereby the section violates due process of law. With this assertion the court disagrees and is of the opinion that the statute is not void for vagueness or indefiniteness. The court is further of the opinion that plaintiffs do have standing to question the validity of the statute in question.
In Matter of Falanga v. Board of Educ. (Sup. Ct., Oswego County, July 24, 1968, Sullivan, J.), a matter in which similar facts, contentions and questions were under consideration, Mr. Justice Sullivan found: “that there is not one scintilla of evidence presented herein that the teachings of the Roman Catholic Faith or Religion are contrary to the practices required by Section 2164 of the Public Health Law; that petitioner’s personal moral beliefs as to immunization and his conscientious objection thereto do not come within the purview of Section 2164, Subdivision 8, of the Public Health Law.”
*536 The court in Falanga (supra) further found that the determination to exclude the infant “ from respondent’s school district because she has not been immunized as required by Section 2164 of the Public Health Law is not arbitrary, capricious or an abuse of discretion but is based on facts and law * * * that Section 2164 of the Public Health Law is not unconstitutional and that it is not discriminatory, nor has the petitioner and the infant been discriminated against. (See Matter of Elwell, 55 Misc 2d 252.) ”
In another similar matter, Matter of Marko (Family Ct., Steuben County, Dec. 15, 1967, Wightman, J.) where the constitutionality of section 2164 of the Public Health Law was challenged, the parents of the child being of the Greek Catholic, Eastern Rite Faith or Religion, the court found that section 2164 of the Public Health Law was constitutional and “that the respondents and their child are neither being arbitrarily discriminated against, nor do they come within the exemptions of the statute ”.
This court concludes that section 2164 of the Public Health Law does not interfere with plaintiffs ’ freedom of worship, that it is not discriminatory nor does it constitute an establishment of a religion, and that it is constitutional and binding upon plaintiffs.
Summary judgment should be granted defendants. No motion costs or taxable costs are awarded.