The Honorable Jim Morrison State Representative, 121st District 3 Cottonwood Drive Colby, KS 67701
Dear Representative Morrison:
You request our opinion regarding Kansas laws requiring immunization of students. Specifically, your question is this, "Does the Kansas Law requiring tetanus vaccination deny parental and religious rights by not allowing parents to object?" You also ask if there are any legal provisions which do allow parents to object to any immunizations.
You have also indicated this request relates to a specific factual situation. The child involved is 15 years of age and the vaccination involved is a tetanus "booster." You have further indicated that the parent wishes to object to the vaccination for personal reasons, including her personal belief that parents are responsible for procuring medical treatment as needed and the belief that she as a parent must follow her conscience in determining what treatment is needed in view of her religious beliefs. Within this opinion we will respond to the broader questions you have asked, as well as address the individual fact scenario you have presented.
The current law addressing the matter of student immunization is K.S.A. 1993 Supp. 72-5209, as amended by L. 1994, ch. 206, § 1. Before determining whether a parent's constitutional rights are violated by K.S.A. 1993 Supp. 72-5209, as amended, we must determine which pupils the legislature and/or the secretary of health and environment require to be immunized. To better understand this statute, it is beneficial to follow the statute throughout its history.
The predecessor to K.S.A. 72-5209, K.S.A. 72-5381, was enacted in 1961 and it provided that:
 "Any pupil entering school for the first time in this state shall, prior to admission, be required to present to the appropriate school authorities certification from a licensed physician . . . that he has received or is in the process of receiving immunization against poliomyelitis, small pox, diphtheria, measles, pertussis, and tetanus, . . . or in the way of alternative to such requirements shall present:
 "(a) Certification from a licensed physician stating the physical condition of the child to be such the test and immunization would seriously endanger his life or health, or
 "(b) a written statement signed by one parent or guardian that he is an adherent of a religious denomination whose religious teachings are opposed to immunization, or
 "(c) a written statement signed by one parent or guardian requesting that the local health department give the immunization because the parents or guardians lack the means to pay for such immunization, or
 "(d) a written statement signed by one parent or guardian that the parent or guardian does not wish the said child to receive immunizations." Id.
In 1965, the statute was amended by L. 1965, ch. 412, § 1. The most significant change was the removal of subsection (d); the provision which provided a general parental objection to immunizations. Id. In 1970, the legislature amended the statute again by adding language regarding rubella. L. 1970, ch. 283 § 1.
In 1975, after having the statutory number changed to K.S.A. 72-5209, the statute received only minor amendments. L. 1975, ch. 462, § 107. One relevant change involved an amendment to subsection (b):
 "(b) a written statement signed by one parent or guardian that the child is an adherent of a religious denomination whose religious teachings are opposed to such tests and immunizations. . . ." (Emphasis added). Id.
In 1978, the statute received significant amendments, including a requirement that each student provide evidence, a certificate, of the required inoculations. L. 1978, ch. 291, § 2. The amendments also vested the secretary of the department of health and environment with the authority to determine what tests and inoculations would be required.Id.
Based upon this statutory change, the secretary adopted K.A.R.28-1-20. The regulation provides that:
 "(a) The inoculations for disease prevention which pupils shall receive before enrolling in any Kansas school for the first time are: diptheria, pertussis (whooping cough), tetanus, poliomyelitis, mumps, rubella (German measles) and measles. (rubeola).
. . . .
 "(c) The immunization record of each pupil shall indicate that inoculation with the delineated vaccines, as approved, has been accomplished . . . in accordance with the immunization schedule published by the Kansas department of health and environment or the American academy of pediatrics." Id. (Emphasis added).
The current version of K.S.A. 1993 Supp. 72-5209, as amended by L. 1994, ch. 206, § 1, also includes a provision that:
 "(a) In each school year, every pupil enrolling or enrolled in any school for the first time in this state, . . . and such other pupils as may be designated by the secretary, prior to admission to and attendance at school, shall present to the appropriate school board certification from a physician . . . that the pupil has received such tests and inoculations as are deemed necessary by the secretary by such means as are approved by the secretary. . . ."(Emphasis added).
In applying K.S.A. 1993 Supp. 72-5209, as amended and K.A.R. 28-1-20 to the specific facts you have set forth, it appears the child is required by statute to receive tetanus shots before admission to school. To arrive at how a 15 year old individual is required to receive a tetanus "booster," understanding is gained by starting with the regulation requirements and working back to the statute.
The secretary has adopted the ACIP recommended immunization schedule dated 9/94 as its immunization schedule. The ACIP schedule requires that individuals 14-16 shall receive a tetanus shot, the last in a series of 6. By implication the secretary has designated all pupils between 14-16 as appropriate "pupils" to receive vaccinations. The authority to designate such individuals is set forth in K.S.A. 1993 Supp. 72-5209(a), as amended. The specific provision requires that: "[s]uch other pupils as designated by the secretary . . . shall present to the appropriate school board certification . . . that the pupil has received such tests and inoculations as are deemed necessary by the secretary. . . ." Id.
Furthermore, the form which the secretary adopted is entitled the "Kansas Certification of Immunization" (KCI). The form was revised in May of 1994. On the second page of the form the secretary requires that children ages 12-18 shall have received 3 Diptheria, Tetanus, Pertussis (DTP) shots, with the Tetanus "booster" administered 10 years after the last DTP shot. Under K.S.A. 72-5211, as amended by L. 1994, ch. 206, § 3,:
 "Schools shall utilize the reporting form adopted by the secretary for documentation of all immunizations. . . ."
Therefore, for a student to present the "appropriate school board certification," as required by K.S.A. 1993 Supp. 72-5209, as amended they must complete the KCI form the secretary requires under K.S.A. 72-5211, as amended. Since a tetanus booster is required on the KCI form for students 12-18 years of age, an individual who falls within that age group must have received their tetanus "booster" to meet the requirements of K.S.A. 1993 Supp. 72-5209, as amended.
We opine that the secretary's listing of the tetanus "boosters" in Kansas's immunization schedule and in the KCI form requires the booster of pupils in the 12-18 year age group prior to their admittance to school pursuant to K.S.A. 1993 Supp. 72-5209(a), as amended. Furthermore, failure to complete the required series will place a pupil in non-compliance. Id. It remains to be determined whether K.S.A. 1993 Supp. 72-5209, as amended, denies any parental rights or violates any rights to religious freedom.
The Kansas Supreme Court briefly spoke on the legislature's authority to enact such an immunization law early in the century. In 1902, the parents of a Dodge City child challenged a city ordinance which required children to be vaccinated before their admittance to school. Osborn v.Russell, 64 Kan. 507 (1902). The court held that absent specific legislative authority a board of education could not exclude a child merely because they had not been vaccinated. Id. The court also "assumed the legislature has authority to enact such laws as are requisite for the preservation of health. . . ." Id. at 509. Despite the fact that the Kansas Supreme Court has never held that the legislature has the requisite authority to enact this health legislation, the United States Supreme Court has so held.
In Zucht v. King, 260 U.S. 174, 45 S.Ct. 24, 67 L.Ed. 194 (1922), a child was excluded from a San Antonio school because she had not received vaccinations required by a city ordinance. Id. The parents challenged the statute which gave the city the authority to require the vaccinations. 260 U.S. at 175. They argued the law denied them due process. Id. The Court held that it was within the police power of states to require compulsory vaccination. 260 U.S. at 176. Since the requirement was a valid exercise of police power, it did not infringe upon any federal constitutional rights. Id.
Subsequent to the Zucht decision, there have been challenges in other states to similar statutes which require vaccinations of children prior to school admission. Most of these cases cite to Jacobson v.Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905), upholding vaccination laws as a valid exercise of a state's police powers andPrince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 343
(1934), holding that states may enact regulations pursuant to their police powers, despite the regulation's infringement upon constitutional rights.
In Jacobson, a statute allowing local health boards to mandate vaccinations was challenged by an individual who argued the statute violated his personal liberty as guaranteed by the United States constitution. 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643. The Court upheld the statute and Justice Harlan stated:
 "[T]he liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be . . . wholly freed from restraint. . . . Society based upon the rule that each one is a law unto himself would soon be confronted with disorder and anarchy. . . . This court has more than once recognized it as a fundamental principle that `persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health and prosperity of the State;'. . . ." Id. [Citations omitted].
The Court then held that the power to require immunizations was specifically within the police power of a state. Id. This position has been adopted by many other courts. Itz v. Penick, 493 S.W.2d 506 (Tex. 1973) [Citations omitted].
In Prince, one of the members of a Jehovah Witness sect had her children sell religious publications. 321 U.S. at 161. The state claimed that such actions violated the state's child labor laws. Id. The mother of the child claimed that the law violated her parental rights and her right to religious freedom. 321 U.S. at 159. The Court held the statute did not violate parental rights or rights of religious freedom. In the well written and reasoned opinion, Justice Rutledge stated that:
 "On one side is the . . . claim of conscience and religious practice. With it is allied the parent's claim to authority in her own household and in the rearing of her children. . . . Against these sacred private interests . . . stand the interests of society to protect the welfare of children. . . .
 "The rights of children to exercise their religion, and of parents to give them religious training and to encourage them in the practice of religious belief . . . have had recognition here. . . .
 "But the family itself is not beyond regulation in the public interest, as against a claim of religious liberty. [Citations omitted.] And neither rights of religion nor rights of parenthood are beyond limitation. Acting to guard the general interest in youth's well being, the state as parens patriae may restrict the parent's control. . . . Its authority is not nullified because the parent grounds his claim to control the child's course of conduct on religion or conscience. Thus he cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds. The right to practice religion freely does not include liberty to expose the community or the child to . . . ill health or death." Prince v. Massachusetts, 321 U.S. at 166, 167
(Emphasis added) [Citations omitted].
Following these decisions, other state courts have upheld statutes similar to the one in the instant case as nonviolative of parents' right to religious freedom. In Wright v. DeWitt School District No.#1,385 S.W.2d 644 (Ark. 1965) the court held religious beliefs to be subject to reasonable regulation by the state. The court in Board of Educationof Lake Mountain v. Maas, 152 A.2d 394 (N.J. 1959)held that a regulation requiring vaccination prior to admittance to school did not "abridge religious freedom within the meaning of the Federal or State Constitutions." 152 A.2d at 405.
Based upon the foregoing case law, we opine that K.S.A. 1993 Supp.72-5209, as amended by L. 1994, ch. 206, § 1, is constitutional. It was enacted to protect the children of the state from specific deadly diseases, therefore it is within the state's police power to enact such a law without offending parental rights or rights of religious freedom.
For a student to avoid the certificate of immunization requirements of K.S.A. 72-5209, as amended by L. 1994, ch. 206, § 1, they must qualify for one of the statutory alternatives. A pupil is not required to meet the certification requirements if they provide:
 "(1) An annual written statement signed by a licensed physician stating the physical condition of the child to be such that the tests or inoculations would seriously endanger the life or health of the child, or
 "(2) a written statement signed by one parent or guardian that the child is adherent of a religious denomination whose religious teachings are opposed to such tests or inoculations." K.S.A. 1993 Supp. 72-5209
(b), as amended by L. 1994, ch. 206, § 1.
These are the only statutory alternatives a child has to receiving the required inoculations and they are set forth on the KCI form. As noted earlier, a general parental objection was removed by the legislature in 1965. L. 1965, ch. 412, § 1. Currently, the Kansas legislature only provides for parental involvement in vaccination within the religious alternative. K.S.A. 1993 Supp. 72-5209(b)(1), as amended by L. 1994, ch. 206, § 1. This involvement is limited to providing a written statement that the child follows a religion the teachings of which opposes the inoculations. Id.
When the intent of the legislature is expressed in clear terms, the language must be regarded as conclusive. Negonsott v. Samuels,113 S.Ct. 122, 122 L.Ed.2d 457 (1993). Therefore, under the statute parents do not have any right to object to the inoculations of their children. However, there is a question as to whether or not the statutory exception itself, as written, is constitutional.
In the fact scenario you present, the parent objected to immunization because in not following her personal moral objections to vaccinations she would be violating her religion. Other jurisdictions have held similar arguments to be outside of their religious exemptions to compulsory vaccination. In McCartney v. Austin, 293 N.Y.S.2d 188,57 Misc.2d 525 (1968), a Roman Catholic parent attempted to avoid compulsory vaccination for his children under an exemption for parents who were members of "recognized religious organization whose teachings are contrary to the . . . " inoculations. The parent asserted that by requiring his child to be vaccinated it would violate the parent's conscience and his deep moral conviction against vaccinations. Id. at 192. The court, after noting that the Roman Catholic church does not have a proscription against inoculations, held that moral convictions or personal beliefs do not fall within the statute and therefore, the statute did not violate the parent's freedom of worship. Id. at 196-200.
In Syska v. Montgomery Cty. Bd. of Ed., 415 A.2d 301 (Md.App. 1980), a parent would not immunize her two children because she had "deeply held moral convictions." She argued that a statute similar to the one litigated in McCarty violated the first amendment because the exemption "protected" religion. Id. at 303, 304. The court found she did not fall under the exemption because her beliefs were philosophical rather than religious. Id. at 304.
In applying the above cases and the statute to the facts you indicated, the child probably would not be entitled to the Kansas religious exemption. First, as noted above, the statute specifies that the religious belief must be that of the child and not the parent. K.S.A. 1993 Supp. 72-5209(b)(2), as amended by L. 1994, ch. 206, § 1. Secondly, even if the objections mentioned were the child's, personal convictions and moral attitudes do not equate to "a religious denomination whose teachings are opposed to such tests and immunizations. . . . " Id.
It should also be noted that the religious exemption is not required for K.S.A. 1993 Supp. 72-5209, as amended to be valid. In Brown v. Stone,378 So.2d 218 (Miss. 1980), the court struck a provision which allowed for a religious exemption as violative of the fourteenth amendment of the United States constitution, but upheld the balance of the immunization statute as a legitimate exercise of state power because of its concern for the health of its children. More recently in Davis v. State,451 A.2d 107 (Md.App. 1982), the religious exemption was stricken as violative of the establishment clause of the first amendment of the United States consitution, but the balance of the compulsory immunization statute was upheld.
Based upon the foregoing cases, we opine that K.S.A. 1993 Supp. 72-5209, as amended by L. 1994, ch. 206, § 1, does not deny any parental rights or rights of religious freedom. Further, we opine that parents have no objections available to avoid the immunization certificate requirements.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Lawrence J. Logback Assistant Attorney General
RTS:JLM:LJL:bas