**Diane GOSLIN, Petitioner**

v.

**STATE BOARD OF MEDICINE,
Respondent.**

Commonwealth Court of Pennsylvania.

Heard Oct. 24, 2007.

Decided Oct. 31, 2007.

Publication Ordered Nov. 16, 2007.

Barbara A. Zemlock, Harrisburg, for petitioner.

Gerald S. Smith, Harrisburg, for respondent.

OPINION BY Judge COLINS.

Diane Goslin has filed an application for stay or supersedeas pending appeal of an adjudication and order of the State Board of Medicine that concluded that Goslin had been engaging in the unlicensed practice of medicine and midwifery, assessed civil penalties, and ordered Goslin to discontinue the unlicensed practice of medicine and midwifery.

Ms. Goslin has been practicing midwifery in the central part of the Commonwealth, particularly within the Amish community, for over twenty-six years. There

is nothing in the record to indicate that Ms. Goslin has been providing these services in anything less than an exemplary fashion to women, most of whom have no health insurance, and/or whose religious beliefs discourage them from giving birth in hospitals.

### Statutory Background

Pertinent to this Court's discussion, we note that the General Assembly adopted a law related to the practice of midwifery in 1929, Act of April 4, 1929, P.L. 160, 63 P.S. § 1701–176. Section 1 of that law provides as follows:

[I]t shall be unlawful for any person or persons, except a duly licensed physician or osteopath, to practice midwifery in this Commonwealth, before receiving a certificate from the State Board of Medical Education and Licensure … authorizing such person … to do so.

In 1974, the General Assembly again enacted legislation relevant to the practice of midwifery, adopting the Medical Practice Act of 1974, Act of July 20, 1974, P.L. 551. Section 4 of that Act included the following provision:

(4) Midwifery, Physical Therapy and Drugless Therapy. Nothing in this act shall be construed to preclude the board from continuing to license, register and regulate persons engaged in the practice of midwifery …. in accordance with existing rules and regulations lawfully promulgated by said board prior to the effective date of this act.

The Medical Practice Act of 1985, Act of December 20, 1985, P.L. 457, is also significant to our discussion. That law defines the terms "midwife" or "nurse-midwife" as "[a]n individual who is licensed as a midwife by the board." Section 2 of the Act, 63 P.S. § 422.2. Also key to the resolution of the application is Section 12 of the Act, 63 P.S. § 422.12, which provides that "[a] midwife who has been licensed previously by the board may continue to practice midwifery in accordance with regulations promulgated by the board," and Section 35 of the Act, 63 P.S. § 422.35, which requires that nurse-midwifes also have certification as registered nurses. We note that the Act of 1985 contains a provision that provides for the repeal of all other acts or parts of acts that are inconsistent with the Act of 1985. Section 48. The Act also contains a provision that essentially grandfathers the rights of "[a]ny person who holds a valid license, certificate or registration issued by the Board …. under the act …. known as the Medical Practice Act of 1974 …. shall be deemed licensed, certificated or registered by the …. Board."

Based upon these provisions we surmise the following. Beginning in 1929, the Board was required to issue licenses for the practice of midwifery. In 1974, the General Assembly indicated its intent to continue to have the Board issue licenses to persons who desired to engage in the practice of midwifery. However, by enacting the Medical Practice Act of 1985, the General Assembly signaled a shift in perspective with regard to midwifery. First, the legislature adopted a definition of the term "midwife" to include only such persons who are licensed by the Board. This requirement the General Assembly extended to nurse-midwifes as well. Second, the General Assembly, through both sections 12(a) and 52, expressed its intent to allow persons who had practiced midwifery under the earlier midwife provisions of the 1929 Act and the Medical Practice Act of 1974 to be entitled to continue their existing practices.

Although the record reveals — and the Board does not contest — that Goslin has an exceptional degree of experience and certification from a highly regarded na-

tional midwife organization, North American Registry of Midwives, she never obtained a certificate under the 1929 Act or under Section 4(4) of the Medical Practice Act of 1974. The Board has not asserted that Goslin has ever practiced in a negligent or dangerous manner. Nor has the Board asserted that any of Goslin's patients have ever sustained injuries by the application of her services.

The Board initiated the underlying action in August 2006 by issuing an order to show cause, alleging that Goslin is subject to civil penalties for engaging in the unlawful practice of medicine and midwifery in violation of Sections 10, 35, and 39(b) of the Medical Practice Act of 1985, 63 P.S. §§ 422.10, 422.35, and 422.39(b). Following the exchange of pleadings in this matter, the parties submitted to a hearing examiner a stipulation of facts. Upon motion of the Commonwealth as a hearing before the examiner, the parties substituted the stipulation of facts for those averred in the initial rule to show cause filed by the Commonwealth. Neither party called any witnesses at the hearing, but they did submit documentary evidence. The hearing examiner issued a decision; however, the Board elected to review the hearing examiner's decision and rendered its own factual findings and legal conclusions. The Board concluded that Goslin had engaged in the unlicensed practice of medicine and midwifery. Goslin appealed to this Court and filed the present application for a stay or supersedeas pending appeal.

### Requisite Standard for Granting a Stay or Supersedeas

■ As Goslin notes in her application, our Supreme Court, in *Pennsylvania Public Utility Commission v. Process Gas Consumers Group*, 502 Pa. 545, 467 A.2d 805 (1983) has set forth the standard a litigant must satisfy in seeking a stay of an adjudicatory body's decision. Applicants for a stay or supersedeas must:

(1) make a strong showing of likelihood of success on the merits;

(2) demonstrate that, without the grant of a stay, the applicant will suffer irreparable injury;

(3) establish that the Court's issuance of a stay will not result in substantial harm to other parties interested in the proceedings; and

(4) show that the issuance of a stay will not adversely affect the public interest.

■ We also recognize, as noted by Goslin, that the Supreme Court also indicated that jurists considering applications should not regard the first prong inflexibly. Rather, in exercising its discretion to grant or deny a stay pending appeal, this Court may properly grant a stay, even when a litigant has presented a substantial case on the merits, if the litigant's showing with regard to the remaining three factors strongly supports the applicant's request. *Witmer v. Department of Transportation, Bureau of Driver Licensing*, 889 A.2d 638, 640 (Pa.Cmwlth.2005). However, for the reasons expressed below, we conclude that granting a stay or supersedeas is not appropriate.

■ In reviewing an administrative agency's decision-making, courts are required to extend a great degree of deference to a tribunal's expertise in interpreting legislative enactments. *Velocity Express v. Human Relations Commission*, 853 A.2d 1182 (Pa.Cmwlth.2004). This deference is appropriate in most situations because the General Assembly has enacted legislation vesting in administrative agencies certain powers that reflect the desire to establish rule-making and decision-making bodies that develop insight and experience in a particular

subject-matter area, and are thus in a better position through that acquired knowledge and experience to set, and enforce, standards peculiar to the particular subject matter. In this case, the General Assembly enacted legislation relating to the establishment of a board whose mission is to set and enforce standards relating to the practice of medicine. The Court must defer to an agency's interpretation of its rules and regulations unless the interpretation is unreasonable or the interpretation frustrates the legislative purpose.

In her application, Goslin has noted the following pertinent facts: (1) under the Midwife Law of 1929 a person only needs a certificate to practice midwifery; (2) the 1929 law does not mandate that applicants for midwife certificates be registered nurses; (3) the Board no longer issues certificates under the 1929 law; and (4) Goslin does hold a certificate from a national midwifery association.

However, the Board reflected upon the particular functions Goslin performs for her clients. The Board's Findings of Fact Nos. 11 and 12 set forth the nature of Goslin's practice:

> 11. In her capacity as a lay midwife, Respondent provides the following services:
>
> a. Pre-natal checkups, including, on occasion, hemoglobin tests;
>
> b. Assistance with labor;
>
> c. Assistance with the delivery of the baby;
>
> d. Postpartum care and pap tests as needed; and
>
> e. Newborn examinations, including weight, measurements, lungs, check for newborn jaundice; PKU test, cord care, nursing history, elimination/viod history.
>
> (Joint Stip. at ¶ 10)

> 12. As part of her services as a lay midwife, Respondent assists with home births; specifically, Respondent will:
>
> a. "Coach" the mother through labor;
>
> b. "Catch" the baby if a family member does not want to do so;
>
> c. Tie and cut the cord if a family member does not want to do so; and
>
> d. Contact a doctor in the event that an emergency situation arises in which medical care is required.
>
> (Joint Stip. at ¶ 11)

Based upon these factual findings, the Board concluded that Goslin "engaged in the unauthorized practice of medicine [and midwifery] by providing antepartum, intrapartum, postpartum and/or nonsurgically related gynecological care when she was not licensed to as a physician. . . ." Conclusions of Law Nos. 3 and 5. The Board opined as follows:

> Under section 2 of the Act "medicine and surgery" is defined as "[t]he art and science of which the objectives are the cure of disease and the preservation of the health of man, including the practice of the healing art with or without drugs, except healing by spiritual means or prayer." The "healing arts" is defined as "[t]he science and skill of diagnosis and treatment in any manner whatsoever of disease or any ailment of the human body."

(Citations omitted.)

Section 10 of the Act, 63 P.S. § 422.10 provides that only medical doctors may engage in the practice of medicine or purport to practice medicine and that unless a person is authorized or exempted by the Act, such activities constitute the unlawful practice of medicine. In complying with our duty to defer to the Board's expertise in interpreting its statutory directives, we must conclude that the Board has not exceeded or gone beyond a reasonable inter-

pretation of the Medical Practice Act of 1985. Clearly, the activities in which Goslin engages pertain to the treatment of the body and the healing arts. Accordingly, we believe that Goslin is not likely to succeed on the merits of her case.

With regard to the practice of midwifery, we also conclude that Goslin has been practicing midwifery, and that, based upon the legislative transition described above from the 1929 licensing requirements through the 1974 Act and finally, the Act of 1985, the General Assembly, while recognizing the historical significance that the practice of midwifery has had and continues to have in every civilization, has elected — as is its prerogative — to require that those who presently seek to practice midwifery — of any variety — either have already obtained a certificate that the 1985 Act grandfathers or have obtained the requisite qualifications for practicing as a midwife under the Act and the Board's regulations.

However, the Court is concerned with regard to the freedom of association interests Goslin's clients have in pursuing their interest as parents to have their children born in their own homes. We perceive a conflict between the interests of the Commonwealth in seeking to ensure the health and safety of both women and their children and the interest of Goslin's clients to direct the manner of delivery of pre-and post-natal care, as well as the actually delivery of their child. Some people, because of religious or other beliefs, hold strong convictions regarding their right to choose whether to consult a medical professional regarding their health. However, in this case, the Board and Goslin have presented a situation in which not only an expectant mother, cognitive and presumably able to make personal decisions, but also an unborn child, who, while gestating, has no voice in his or her own potential

future. In this light, the Commonwealth's position presents a more clear reason to decide in a way unfavorable to Goslin and the other unlicensed midwifes like her.

This Court in *Zook v. State Board of Dentistry*, 683 A.2d 713 (Pa.Cmwlth.1996) rejected the argument of a person who performed dentistry work in an Amish community who asserted that the State Board of Dentistry should accommodate his religious beliefs and allow him to continue his practice of providing dentistry services to people in the Amish community. However, this Court agreed with the Board in noting that Zook was essentially raising an economic issue rather than a religious one. As the Court stated: "This is an argument that could be made by many citizens who cannot afford insurance, irrespective of their religious affiliation." Id. at 715. The Court summarized, noting that Zook's religion prohibited only the purchase of health care insurance, not the purchase of health care services — his religion in no way prevented himself or other members of the religious community from paying for the services of a licensed dentist.

█ In this case, there was some discussion during argument regarding the First Amendment interests at stake. We note initially that generally a litigant can raise only his or her own constitutional rights. In this case, as in *Zook*, while Goslin espouses an unrefuted spiritual desire to act as a midwife, she has not asserted a specific religious interest that is at issue. Although the pleadings suggest that Goslin's clients have a religious impetus to having in-home births, none of those persons are parties to this litigation, and hence, we do not believe that she has an adequate position from which to raise the religious interests of her client in her defense.

Furthermore, even if Goslin had raised the First Amendment by offering support for her avowed interest, we are not convinced that the First Amendment precludes (1) the General Assembly from enacting statutes that prevent lay midwifes from practicing or (2) the Board from promulgating regulations or interpreting the law and regulations in a manner that has such effect.

As the Supreme Court of New Jersey stated in the seminal case of *In re Quinlan*, 70 N.J. 10, 35–36, 355 A.2d 647, 661–662 (1976):

> [T]he right to religious beliefs is absolute but conduct in pursuance thereof is not wholly immune from governmental restraint. *John F. Kennedy Memorial Hosp. v. Heston*, 58 N.J. 576, 580–81, 279 A.2d 670 (1971). So it is that, for the sake of life, courts sometimes (but not always) order blood transfusions for Jehovah's Witnesses (whose religious beliefs abhor such procedure), *Application of President & Directors of Georgetown College, Inc.*, 118 U.S.App. D.C. 80, 331 F.2d 1000 (D.C.Cir.), cert. den., 377 U.S. 978, 84 S.Ct. 1883, 12 L.Ed.2d 746 ... and protect the public health as in the case of compulsory vaccination (over the strongest of religious objections), e.g., *Wright v. DeWitt School Dist. 1*, 238 Ark. 906, 385 S.W.2d 644 (Sup.Ct. 1965); *Mountain Lakes Bd. of Educ. v. Maas*, 56 N.J.Super. 245 (App.Div.1959), aff'd o.b., 31 N.J. 537, 158 A.2d 330 (1960), cert. den., 363 U.S. 843, 80 S.Ct. 1613, 4 L.Ed.2d 1727 (1960); *McCartney v. Austin*, 57 Misc.2d 525, 293 N.Y.S.2d 188 (Sup.Ct.1968). The public interest is thus considered paramount, without essential dissolution of respect for religious beliefs.

We think, without further examples, that, ranged against the State's interest in the preservation of life, the impingement of religious belief, much less religious "neutrality" as here, does not reflect a constitutional question, in the circumstances at least of the case presently before the Court. Moreover, like the trial court, we do not recognize an independent parental right of religious freedom to support the relief requested. [*Matter of Quinlan*] 137 N.J.Super. [227] at 267–68 [348 A.2d 801 (1975)].

In the present case, while we recognize the distinct interest of future parents to make decisions regarding the manner by which their children may be delivered, we believe that the Commonwealth has a paramount interest in ensuring that the lives of unborn fetuses are medically protected.

■ Based upon the foregoing, this Court concludes that Goslin has not prevailed in satisfying the first prong of *Process Gas*. Further, for the reasons espoused above, we conclude that, with the exception of the irreparable harm prong, Goslin has not satisfied the remaining requirements. Accordingly, we will deny the stay or supersedeas as to the cease and desist aspect of the Board's order. However, this Court must express its opinion that the penalty the Board imposed upon Goslin appears to this writer as unconscionable. Accordingly, the Court will grant a stay of that aspect of the Board's decision. The Board may not attempt to collect the penalties imposed until this Court decides this matter on the merits. The Court would also suggest that the Board reconsider the amount of the fines imposed upon a person who appears to have acted in good faith. Petitioner's request for a stay or supersedeas is denied in all other respects.

### *ORDER*

AND NOW, this 31st day of October 2007, the application of Petitioner Diane Goslin for a stay or supersedeas is denied

in part and granted in part. The Order is stayed as to the imposition of penalties,[1] but is denied as to the Board's order to cease and desist from the practice of midwifery.

---

1. The Court finds the imposition of an $11,000 fine in the instant case as not only punitive but also repugnant to traditional concepts of justice.